G. P. PUTNAM'S SONS, A CORPORATION, PLAINTIFF-AP-PELLANT, v. GUY W. CALISSI, BERGEN COUNTY PROS-ECUTOR, DEFENDANT-RESPONDENT.

Argued October 23, 1967—Decided November 21, 1967.

*Mr. Charles Rembar,* of the New York Bar, for plaintiff-appellant (*Messrs. Parisi, Evers & Greenfield,* attorneys).

398

*Mr. Harold N. Springstead,* Assistant Prosecutor, for defendant-respondent (*Mr. Guy W. Calissi,* Bergen County Prosecutor, attorney).

The opinion of the court was delivered

PER CURIAM. The Superior Court, Chancery Division, enjoined G. P. Putnam's Sons from publishing, selling or distributing in New Jersey John Cleland's *Memoirs of a Woman of Pleasure,* more commonly known as *Fanny Hill.* The injunction was based upon that court's finding that the book is obscene. *G. P. Putnam's Sons v. Calissi,* 86 *N. J. Super.* 82 (*Ch. Div.* 1964). G. P. Putnam's Sons appealed to the Appellate Division and we certified before argument there.

Under the standards enunciated by the United States Supreme Court, it must be concluded that publishing, selling, or distributing the book in question is protected from governmental supression by the First and Fourteenth Amendments. *Redrup v. New York,* 386 *U. S.* 767, 87 *S. Ct.* 1414, 18 *L. Ed. 2d* 515 (1967); see *A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Massachusetts,* 383 *U. S.* 413, 86 *S. Ct.* 975, 16 *L. Ed. 2d* 1 (1966); see also *Potomac News Co. v. United States,* 389 *U. S.* 47, 88 *S. Ct.* 233, 19 *L. Ed. 2d* 46 (Oct. 23, 1967), reversing 373 *F. 2d* 635 (*4th Cir.* 1967); *Central Magazine Sales Ltd. v. United States,* 389 *U. S.* 50, 88 *S. Ct.* 235, 19 *L. Ed. 2d* 49 (Oct. 23, 1967), reversing 373 *F. 2d* 633 (*4th Cir.* 1967).

Accordingly, the judgment of the Chancery Division is reversed.

FRANCIS, J. (dissenting). I would affirm the judgment substantially for the reasons expressed by the Chancery Division. Applying the recent refinement of the test of obscenity promulgated by the United States Supreme Court, in my judgment (1) the dominant theme of the material in Fanny Hill taken as a whole appeals to a prurient interest, (2) the material is patently offensive because it affronts

contemporary community standards relating to the description or representation of sexual matters, and (3) the material is *utterly* without redeeming social value. See *A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General,* 383 *U. S.* 413, 418, 86 *S. Ct.* 975, 16 *L. Ed. 2d* 1 (1966). This test, although expounded on the appeal from the judgment of the Massachusetts Supreme Judicial Court, which had condemned the book as obscene, actually was not applied by the United States Supreme Court in the case. The reversal and remand were ordered because, according to the plurality opinion, the state court had misinterpreted the third of the three criteria, which the opinion said must co-exist if a novel is to be declared obscene. Consequently, there was no occasion to decide if the dominant theme is an appeal to a prurient interest, or whether it affronts contemporary community standards relating to the description or representation of sexual matters.

Mr. Justice Clark did review the book, and in his dissent, with which I heartily agree, he found it to be beyond the limits of constitutional protection when judged by any one or all three of the components of obscenity. 383 *U. S.,* at *pp.* 441–455, 86 *S. Ct.* 975. The Justice pointed out that 200 of the book's 210 pages are devoted to Fanny Hill's experiences in a house of prostitution, and he said:

"* * * This is presented to the reader through an uninterrupted succession of descriptions by Fanny, either as an observer or participant, of sexual adventures so vile that one of the male expert witnesses in the case was hesitant to repeat any one of them in the courtroom. These scenes run the gamut of possible sexual experience such as lesbianism, female masturbation, homosexuality between young boys, the destruction of a maidenhead with consequent gory descriptions, the seduction of a young virgin boy, the flagellation of male by female, and vice versa, followed by fervid sexual engagement, and other abhorrent acts, including over two dozen separate bizarre descriptions of different sexual intercourses between male and female characters. In one sequence four girls in a bawdy house are required in the presence of one another to relate the lurid details of their loss of virginity and their glorification of it. This is followed the same evening by 'publick trials' in which each of the four girls engages in sexual intercourse with a different man while the others witness, with Fanny giving a detailed description of the movement and reaction of each couple." 383 *U. S.,* at *pp.* 445–446, 86 *S. Ct.,* at 991.

The cover of the book solicits the prospective buyer with the announcement that its sale has finally been permitted "after 214 years of suppression." And the introduction repeatedly tells the reader that he may expect graphic descriptions of genitals and sexual exploits. 383 *U. S.*, at *p.* 454, 86 *S. Ct.*, at *p.* 995. The publisher of the present edition describes the book as "frankly erotic." In the introduction to the paperback edition, Peter Quennell says it is a "priapic novel" which "treats of pleasure as the aim and end of existence, and of sexual satisfaction as the epitome of pleasure." In the introduction of the only other book written by Cleland, Fanny Hill is labeled as "the most sensational piece of erotica in English literature." Obviously Cleland had no illusions about the kind of novel he was writing. The publisher tells us in the present edition that the author, a "never-do-well bohemian," wrote it in 1749 to make a quick 20 guineas, and in the succeeding more than two centuries since its first appearance, it has had, for the most part, occasional but surreptitious publication. As an indication of the feeling of his contemporaries about his effort, *Loth* in *The Erotic in Literature* (Julian Messner, Inc. 1961) records that when Cleland was called before the Privy Council for authoring the book, the Earl of Granville "offered to obtain for the still impecunious author a pension of one hundred pounds a year if he would undertake never to write this sort of story again." (at *p.* 111).

Massachusetts has the virtue of consistency. In 1821 in the first reported decision of censorship of a book for obscenity in the United States, the Supreme Judicial Court of that commonwealth affirmed the conviction of one Peter Holmes for publishing Fanny Hill. *Commonwealth v. Holmes,* 17 *Mass.* 335 (1821). One hundred forty-four years later the same court again found the book pornographic. *Attorney General v. A Book Named "John Cleland's Memoirs of a Woman of Pleasure",* 349 *Mass.* 69, 206 *N. E.* 2d 403 (1965). In doing so, the majority of the court said it had no doubt that the dominant theme of the novel was an appeal to the prurient interest, or that it was

patently offensive to current community standards. In connection with the requirement that it must be utterly without redeeming social value, the majority, after referring to some "strained" testimony suggesting the book had some literary merit, declared "the fact that the testimony may indicate this book has some minimal literary value does not mean it is of any social importance. We do not interpret the 'social importance' test as requiring that a book which appeals to prurient interest and is patently offensive must be unqualifiedly worthless before it can be deemed obscene." *Attorney General v. A Book, etc.,* 206 *N. E. 2d,* at *p.* 406 (1965).

The plurality opinion of the United States Supreme Court in reviewing the finding of obscenity said:

"We need not consider the claim that the court erred in concluding that *Memoirs* satisfied the prurient appeal and patent offensiveness criteria; for reversal is required because the court misinterpreted the social value criterion.

\*　　\*　　\*　　\*　　\*　　\*　　\*

\* \* \* A book cannot be proscribed unless it is found to be *utterly* without redeeming social value. This is so even though the book is found to possess the requisite prurient appeal and to be patently offensive. Each of the three federal constitutional criteria is to be applied independently; the social value of the book can neither be weighed against nor canceled by its prurient appeal or patent offensiveness." 383 *U. S.,* at *pp.* 418–420, 86 *S. Ct.,* at *pp.* 977–978.

Although I recognize that view of the United States Supreme Court as controlling in state courts, I feel bound to record my disagreement with it. To grant constitutional asylum to a book like Fanny Hill because it may have "minimal" social value in the eyes of some literary sophisticates, even though its dominant appeal is to the prurient interest and is patently offensive to the "average person, applying contemporary community standards," (*Roth v. United States,* 354 *U. S.* 476, 77 *S. Ct.* 1304, 1 *L. Ed. 2d* 1498 (1957)), is just too much. Minimal means of the character of a minim, *i. e.,* the smallest or least possible part or particle; a jot. (Webster's New International Dictionary (3d Ed. Unabridged, 1961) 1438.) In no other

area of the law is *de minimis* sanctified in this fashion. It is suggested that the minim is supplied because the book is well written. Like Mr. Justice Clark, Cleland's aptitude in that field escapes me. 383 *U. S.*, at *p.* 449, 86 *S. Ct.* 975. The display of his kind of talent, if it can be dignified by that name, in the context of Fanny Hill is at best a festered lily growing in the mud. And moreover, as the New York Court of Appeals pointed out a few years ago, there is no rule of law holding that obscenity is suppressible but well-written obscenity is not suppressible. *People v. Fritch,* 13 *N. Y. 2d* 119, 243 *N. Y. S. 2d* 1, 192 *N. E. 2d* 713, 717 (1963).

Adoption of the view that no matter how dirty a book is between its covers, its sale to the public cannot be prohibited if it has "minimal" social value, when judged by some amorphous and indefinable test, is in effect to eliminate all tests, and to say "anything goes."

It is to be regretted that a novel like Fanny Hill has received judicial approval as constitutionally protected free speech. There is respectable authority for the view that such books are literary aphrodisiacs and causally connected with many crimes that presently plague our people. 383 *U. S.*, at *pp.* 452–454, 86 *S. Ct.* 975, footnotes 4–12.

For the reasons stated, I would sustain the trial court's ban on the publication, distribution or sale of the book in the State of New Jersey.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, PROCTOR, GOLDMANN, SCHETTINO and HANEMAN—6.

*For affirmance*—Justice FRANCIS—1.