123 N.J. Super. 310 (1973)
302 A.2d 555
JAMES M. COLEMAN, JR., MONMOUTH COUNTY PROSECUTOR, PLAINTIFF,
v.
EDWARD N. WILSON, SR. AND C AND V THEATRE CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Argued March 21, 1973.
Decided March 21, 1973.
*312 Mr. Malcolm V. Carton, First Assistant Prosecutor, argued the cause for plaintiff (Mr. Frederick J. Kalma, Assistant Prosecutor, on the brief).
Mr. Herbert F. Kassner, of the New York Bar, argued the cause for defendants (Mr. Michael S. Sodowick, Attorney).
Mr. Alfred J. Luciani, Deputy Attorney General, argued the cause for George F. Kugler, Jr., Attorney General of the State of New Jersey, Amicus Curiae (Mr. David S. Baime, Deputy Attorney General, and Mr. Luciani, of counsel and on the brief).
LANE, J.S.C.
Plaintiff, Prosecutor of Monmouth County, instituted this action under N.J.S.A. 2A:115-3.5, seeking injunctive relief to prohibit the further showing of two motion pictures, "Deep Throat" and "Love for Sale", and for surrender of the films to the Sheriff for destruction in accordance with N.J.S.A. 2A:115-3.7. Defendant Wilson is president of C and V Theatre Corporation which had shown the motion pictures to the public on various dates during February and March 1973. The Answer admits the showing of the motion pictures but denies that they are obscene. By counterclaim defendants seek a declaration that N.J.S.A. 2A:115-1.1, N.J.S.A. 2A:115-2, N.J.S.A. 2A:115-3.4 and N.J.S.A. 2A:115-3.5 are unconstitutional. The matter is before the court on final hearing.
The issue raised by the counterclaim is the interpretation of N.J.S.A. 2A:115-1.1 and the determination of its constitutionality. *313 It is agreed that if that provision is constitutional, the other statutes referred to are constitutional with the exception of N.J.S.A. 2A:115-3.5.
N.J.S.A. 2A:115-1.1 defines "obscene":
The word "obscene" wherever it appears in the chapter to which this act is a supplement shall mean that which to the average person, applying contemporary community standards, when considered as a whole, has as its dominant theme or purpose an appeal to prurient interest.
This definition was contained in L. 1971, c. 449, § 3. Before the adoption of that act "obscene" had been defined:
(a) The word "obscene" wherever it appears in the chapter to which this act is a supplement shall mean that which to the average person, applying contemporary community standards, when considered as a whole, has as its dominant theme or purpose an appeal to prurient interest.
(b) Any book, publication, picture, writing, record or other mechanical or electronic audio or visual reproduction or other material shall be obscene within the meaning of subsection (a) hereof if it is established that:
(1) The dominant theme of the material taken as a whole appeals to a prurient interest;
(2) The material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and
(3) The material is utterly without redeeming social value.
The Legislature in making the change spoke clearly as to its intent by stating in N.J.S.A. 2A:115-1.1a:
The Legislature finds that the standards of obscenity now enunciated in chapter 115 of Title 2A of the New Jersey Statutes as amended and supplemented in recent years is unnecessarily permissive and a hindrance to effective legal action against obscene matter. The Legislature further finds that such unnecessary permissiveness has resulted from the incorporation into New Jersey Statutes of language from influential opinions authored by certain United States Supreme Court justices; which language, however, does not represent binding majority decisions of the Supreme Court and, accordingly, need not bind the Legislature or the Judiciary of this State. The Legislature further finds that the most recent binding definition of *314 "obscenity" enunciated by the United States Supreme Court is represented by section 1 of chapter 165, laws of 1962, prior to subsequent amendments; and that said subsequent amendments ought to be repealed in order to reestablish a workable definition of "obscenity" within the framework of our statutory law, and that certain other changes should be made in other statutes for the purpose of consistency.
In Cine-Com Theatres Eastern States, Inc. v. Lordi, 351 F. Supp. 42 (D.N.J. 1972), a three-judge court declared that the definition of obscenity in N.J.S.A. 2A:115-1.1 was at variance with the definition of obscenity established by the United States Supreme Court and therefore unconstitutional. [351 F. Supp. at 49-50] On the other hand State v. Shapiro, 122 N.J. Super. 409 (Law Div. 1973), held the definition constitutional. In that decision after analyzing the more recent cases of the United States Supreme Court, the Law Division concluded that the correct test of obscenity need not include a finding that the material was utterly without redeeming social value. In short, the Law Division agreed with the Legislature's expression of the state of the law in N.J.S.A. 2A:115-1.1a.
In A Book, Etc. v. Attorney General of Com. of Mass., 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966), the prevailing opinion stated:
We defined obscenity in Roth [Roth v. United States] in the following terms: "[W]hether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." 354 U.S. [476] at 489, 77 S.Ct. [1304] at 1311. [1 L.Ed.2d 1498]. Under this definition, as elaborated in subsequent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value. [at p. 418, 86 S.Ct. at p. 977]
State v. Shapiro, supra, refused to recognize as binding that definition, stating, "At best, then, can it be said that *315 four of the nine justices agreed with the rationale of the lead opinion." [122 N.J. Super. at 429] Although much can be said to support the reasoning of the Law Division's decision, this court does not feel free to agree.
The vast majority of courts considering the test of obscenity have felt themselves bound by the definition in A Book, Etc. v. Attorney General of Com. of Mass., supra, 383 U.S. at 418, 86 S.Ct. 975; E.g., United States v. A Motion Picture Film, 404 F.2d 196, 199 (2 Cir.1968); NGC Theatre Corporation v. Mummert, 107 Ariz. 484, 489 P.2d 823, 828 (Sup. Ct. 1971); Stroud v. State, 273 N.E.2d 842, 847-848 (Sup. Ct. Ind. 1971); Smith v. Commonwealth, 465 S.W.2d 918, 920 (Ct. App. Ky. 1971); Woodruff v. State, 11 Md. App. 202, 273 A.2d 436, 443-444 (Ct. of Spec. App. 1971); State v. Carlson, 291 Minn. 368, 192 N.W.2d 421, 426 (Sup. Ct. 1971); Commonwealth v. Dell Publications, Inc., 427 Pa. 189, 233 A.2d 840, 846 (Sup. Ct. 1967), cert. den. 390 U.S. 948, 88 S.Ct. 1038, 19 L.Ed.2d 1140 (1968); Court v. State, 51 Wis.2d 683, 188 N.W.2d 475, 480 (Sup. Ct. 1971).
State v. Hartstein, 469 S.W.2d 329 (Sup. Ct. Mo. 1971) adopted the same reasoning as State v. Shapiro, supra, and declined to apply social value as an independent test of obscenity. The United States Supreme Court granted certiorari and reversed in a memorandum decision citing Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967). Wiener v. Calif., 404 U.S. 988, 92 S.Ct. 534, 30 L.Ed.2d 539 (1971).
In Childs v. State of Oregon, 431 F.2d 272 (9 Cir.1970), the State Court had convicted a defendant under an obscenity statute that did not include the social value test. The United States District Court granted a writ of habeas corpus. It was reversed by the Circuit Court which said that it found the materials obscene, using the three prong test. The United States Supreme Court granted certiorari and reversed in a memorandum decision citing Redrup v. New York, supra, *316 386 U.S. 767, 87 S.Ct. 1414. Childs v. Oregon, 401 U.S. 1006, 91 S.Ct. 1248, 28 L.Ed.2d 542 (1971).
The New Jersey Supreme Court in G.P. Putnam's Sons v. Calissi, 50 N.J. 397 (1967), accepted the test of obscenity set forth in A Book, Etc. v. Attorney General of Com. of Mass., supra, 383 U.S. 413, 86 S.Ct. 975. See also, Keuper v. Wilson, 111 N.J. Super. 489, 493 (Ch. Div. 1970); Lordi v. UA New Jersey Theatres, Inc., 108 N.J. Super. 19, 23-24 (Ch. Div. 1969). The definition of obscenity contained in N.J.S.A. 2A:115-1.1 if read literally is unconstitutional.
It is the duty of the court to construe a statute, if possible, so as to render it constitutional. Camarco v. City of Orange, 61 N.J. 463, 466 (1972); Clifton v. Passaic County Board of Taxation, 28 N.J. 411, 422 (1958). In construing a statute the court must look to the true intention of the law. In Alexander v. N.J. Power & Light Co., 21 N.J. 373 (1956), the court stated:
The statute is to receive a reasonable construction, to serve the apparent legislative purpose. The inquiry in the final analysis is the true intention of the law; and, in the quest for the intention, the letter gives way to the rationale of the expression. The words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms. The particular words are to be made responsive to the essential principle of the law. When the reason of the regulation is general, though the provision is special, it has a general acceptation. The language is not to be given a rigid interpretation when it is apparent that such meaning was not intended. The rule of strict construction cannot be allowed to defeat the evident legislative design. The will of the lawgiver is to be found, not by a mechanical use of particular words and phrases, according to their actual denotation, but by the exercise of reason and judgment in assessing the expression as a composite whole. The indubitable reason of the legislative terms in the aggregate is not to be sacrificed to scholastic strictness of definition or concept. * * * [at p. 378]
The literal meaning of the words will not necessarily control. In Morss v. Forbes, 24 N.J. 341 (1957), the court stated:
*317 On many occasions the sense or spirit of a statute will prevail over the literal, logical, grammatical meaning of the words, if the latter is not in accordance with reason or the principal design of the statute. The most recent expression of the liberal judicial attitude which strives to avoid a narrow, pedantic construction in accordance with the empty principles of rhetoric alone may be found in Lane v. Holderman, 23 N.J. 304 (1957). See also DeFazio v. Haven Savings & Loan Ass'n, 22 N.J. 511, 518 (1956); In re Roche's Estate, 16 N.J. 579, 587 (1954). [at p. 357]
Defendants argue that the intent of the Legislature has been set forth in N.J.S.A. 2A:115-1.1a and that that intent was specifically to define obscenity without reference to the social value test. Although this court has great respect for the Legislature, it is not bound by the Legislature's construction of constitutional decisions of the United States Supreme Court. As noted above, the construction placed by the Legislature upon decisions of the Supreme Court is not in accord with current law.
It becomes the obligation of the court to determine whether the Legislature would want N.J.S.A. 2A:115-1.1 declared unconstitutional or to have it construed in such a way as to carry out the primary intent of the Legislature adopting it. In Schmoll v. Creecy, 54 N.J. 194 (1969), our Supreme Court stated:
The remaining question is whether the wrongful death statute may be read to protect the illegitimate child or must fall in its entirety because of this constitutional defect.
Defendant contends the judiciary cannot enlarge the reach of a statute, for that is solely a legislative function. The proposition is obvious enough, and it is equally true that a court may not restrict the scope of a statute. But neither proposition is involved when the question is whether a statute must fall because of a constitutional defect. Rather the question is whether the Legislature would want the statute to survive, and that inquiry cannot turn simply upon whether the statute, if adjusted to the constitutional demand, will cover more or less than its terms purport to cover. Although cases may be found which seem to speak in such mechanical terms, we think the sounder course is to consider what is involved and to decide from the sense of the situation whether the Legislature would want the statute to succumb. See 2 Sutherland, Statutory Construction (Horack 3d ed. 1943) § 2412, p. 189. [at pp. 202-203]
See also, In re Smith, 59 N.J. 236, 237 (1971).
*318 The intention of the Legislature was to forbid obscene matter to the fullest extent permissible under the First Amendment. In State v. Hudson County News Co., 41 N.J. 247 (1963), the Legislature's intent in dealing with obscenity was stated:
We believe that the Legislature in enacting N.J.S. 2A:115-2, intended to forbid obscene matter to the fullest extent permissible under the First Amendment, made applicable to the states by the Fourteenth Amendment. Accordingly, the "contemporary community standard" to be applied in enforcement of the statute must comport with the limitations imposed on the State by and the freedoms guaranteed the individual by the First Amendment. We are of the opinion that such a standard must necessarily be uniform throughout the nation. [at p. 265]
When confronted with a definition of obscenity similar to that contained in N.J.S.A. 2A:115-1.1, the Supreme Court of Pennsylvania in effect construed the statute to include the three prong test of A Book, Etc. v. Attorney General of Com. of Mass., supra, 383 U.S. 413, 86 S.Ct. 975. Commonwealth v. Lalonde, 447 Pa. 364, 288 A.2d 782 (Sup. Ct. 1972). See also, Entertainment Ventures v. Brewer, 306 F. Supp. 802, 816 (M.D. Ala. 1969).
In considering the constitutionality of N.J.S.A. 2A:115-1.1 the court in Cine-Com Theatres Eastern States, Inc. v. Lordi, supra, 351 F. Supp. 42, was not in a position to construe the statute. It had to consider the statute as it was written. Cf., United States v. Thirty-Seven (37) Photographs, 402 U.S. 363, 369, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971). This court is under no such restriction. N.J.S.A. 2A:115-1.1 is construed to define as obscene only such matter (a) the dominant theme of which taking the matter as a whole appeals to a prurient interest in sex, (b) is patently offensive because it affronts contemporary community (nation-wide) standards relating to the description or representation of sexual matters and (c) is utterly without redeeming social value. So construed N.J.S.A. 2A: 115-1.1 is constitutional.
*319 Defendants assert that notwithstanding the constitutionality of N.J.S.A. 2A:115-1.1, N.J.S.A. 2A:115-3.5 is unconstitutional. Their argument is that after a finding of obscenity the final judgment must contain a provision directing the surrender of the offending material to the Sheriff and a destruction of it by the Sheriff. N.J.S.A. 2A:115-3.7. Since there is no provision in the legislation for an automatic stay of the judgment pending appeal, it is argued that the legislative scheme is unconstitutional under Blount v. Rizzi, 400 U.S. 410, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971). The argument must fail. It is well established in this State that preliminary injunctions will be issued where the subject matter of the litigation would be destroyed or substantially impaired pending hearing were such an injunction not to issue. Benton v. Kernan, 126 N.J. Eq. 343, 345 (E. & A. 1939); General Electric Co. v. Gem Vacuum Stores, 36 N.J. Super. 234, 237 (App. Div. 1955). The identical practice is followed when an appeal is taken from a judgment of a trial court. If this court determines that the films are obscene and orders that they be seized by the Sheriff and destroyed and thereafter an appeal is taken, upon application made the court would stay, pending appeal, that portion of the judgment that directs the Sheriff to destroy the films. Blount v. Rizzi, supra, 400 U.S. 410, 91 S.Ct. 423, is inapposite. That case dealt with a failure to require a prompt judicial review of an administrative finding of obscenity.
"Deep Throat" is a one hour and five minute motion picture portraying a young woman whose clitoris is in her throat. Early in the film there is an extended exhibition of cunnilingus. This is soon followed by a scene of group sex between two women and a number of men showing explicit acts of intercourse, fellatio, cunnilingus and sodomy (see State v. Morrison, 25 N.J. Super. 534, 537, 542 (Cty. Ct. 1953). The young woman consults a buffoon psychiatrist who diagnoses her amazing deformity and prescribes fellatio to achieve an orgasm. The balance of the film deals with *320 the young woman serving as the doctor's assistant by engaging in sexual acts with him and his patients. Long detailed scenes of fellatio, cunnilingus and sodomy are repeatedly shown.
"Love for Sale" runs for half an hour. Three men spend the time in a house of prostitution with three prostitutes engaging in sexual intercourse, fellatio, cunnilingus and sodomy.
Dr. Ernest Van Den Haag who qualified as a psychologist, a psychoanalyst and a sociologist testified as to both of the motion pictures: (1) their dominant theme taking them as a whole appealed to a prurient interest in sex; (2) they were patently offensive because they affronted contemporary community standards (nation-wide) relating to the representation of sexual matters, and (3) they were utterly without redeeming social value.
Defendants offered no testimony as to "Love for Sale". An attempt was made to show that "Deep Throat" at least had redeeming social value. Testimony was given that the film takes sexual variations and techniques out of the closet and allows the viewers to see men and women enjoying what is done by the majority of people in private. A psychiatrist testified that exhibition of the film would allow people to engage in enjoyable sexual acts without shame and guilt and presumably thereby improve mental health. It is argued that the motion picture establishes the right of a woman to enjoy sex in her own way and that the picture is a spoof and humorous. None of these arguments impress the court in the least. Both motion pictures were exhibited to the court. Full credence is given to the testimony of Dr. Van Den Haag. Both of the films are no more than vehicles to portray the sexual acts shown. There is no social value in either of the films. Plaintiff has shown by a preponderance of the evidence that both of the films come within the three prong test of A Book, Etc. v. Attorney General of Com. of Mass., supra, 383 U.S. 413, 86 S.Ct. 975.
*321 Both films are obscene under N.J.S.A. 2A: 115-1.1 as construed above. There will be a judgment for injunctive relief against defendants preventing the further showing of the films. Defendants will be ordered to surrender all copies of the films to the Monmouth County Sheriff forthwith. The Sheriff shall seize the films, hold them for 45 days and then destroy them. If defendants file a notice of appeal, the court will entertain an application for a stay pending appeal of that portion of the judgment that orders destruction. Costs will be taxed for plaintiff.