65 N.J. 462 (1974)
323 A.2d 489
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN De SANTIS, DEFENDANT-APPELLANT. STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RAYMOND ROTH, DEFENDANT-APPELLANT.
The Supreme Court of New Jersey.
Argued June 4, 1974.
Decided August 6, 1974.
*463 Mr. Robert E. Levy argued the causes for the appellants.
Mr. George H. Henningsen, Deputy Attorney General, argued the causes for the respondents (Mr. William F. Hyland, Attorney General, attorney).
The opinion of the Court was delivered by JACOBS, J.
The defendants in these consolidated appeals were convicted in 1971 on charges that they possessed and sold obscene publications in violation of N.J.S.A. 2A:115-2. Their convictions were sustained in the Appellate Division and we denied certification. State v. De Santis, 62 N.J. 77 (1972); State v. Roth, 62 N.J. 431 (1973). In due course they petitioned the United States Supreme Court for certiorari. Their petitions were granted and by orders dated June 25, 1973 in De Santis (413 U.S. 913, 93 S.Ct. 3057, 37 L.Ed.2d 1034) and October 23, 1973 in Roth (414 U.S. 962, 94 S.Ct. 271, 38 L.Ed.2d 210) the Supreme Court vacated the judgments and remanded the cases to the Appellate Division for further consideration in light of Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); Kaplan v. California, 413, U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973); United States v. 12 200 Ft. Reels of Super. 8 mm *464 Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973); United States v. Orito, 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973); Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973); Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973); and Alexander v. Virginia, 413 U.S. 836, 93 S.Ct. 2803, 37 L.Ed.2d 993 (1973). We certified the cases while they were pending in the Appellate Division so that we could determine (1) whether the principles newly announced by the Supreme Court in Miller and the related cases may properly be incorporated into our obscenity statutes so as to sustain their constitutionality and (2) whether they may fairly be incorporated retroactively so as to sustain the convictions of the defendants here.
New Jersey has long had statutory provisions aimed at obscene publications. See 8 e.g., Revision of the Statutes of New Jersey (1709-1877) § 44, p. 234; L. 1898, c. 235, p. 808; R.S. 2:140-2. However, there were no early statutory efforts to define obscenity and though our courts were fully aware of the difficulties and the dangers they supplied general definitions and thereby sought to avoid constitutional infirmities. See State v. Weitershausen, 11 N.J. Super. 487 (App. Div.), certif. denied, 7 N.J. 79 (1951); State v. Kohler, 40 N.J. Super. 600 (App. Div. 1956); cf. Adams Theatre Co. v. Keenan, 12 N.J. 267 (1953). In Adams, Justice Brennan, speaking for this Court, described the statutory language he was dealing with as amorphous and he referred to the ever present danger of censorship. He pointed out that the mere fact that sexual life was the theme of a presentation did not make it obscene and that the question was whether its dominant note was erotic allurement tending to excite lecherous desire, "dirt for dirt's sake only." 12 N.J. at 272. Several years later, speaking for the Supreme Court in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), he held that obscenity was not within the area of constitutionally protected freedom of *465 speech; and in defining obscenity he stated that the test was "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." 354 U.S. at 489, 77 S.Ct. at 1311, 1 L.Ed.2d at 1509; see State v. Hudson County News Co., 41 N.J. 247, 255 (1963). In 1962 our Legislature defined obscenity in substantially the language used by Justice Brennan in Roth. L. 1962, c. 165; N.J.S.A. 2A:115-1.1. See also L. 1962, c. 166; N.J.S.A. 2A:115-3.3
In A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of The Commonwealth of Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966), Justice Brennan wrote the plurality opinion of the Court; he noted that under the Roth definition of obscenity, as elaborated in subsequent cases, the following three elements must coalesce: "It must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." 383 U.S. at 418, 86 S.Ct. at 977, 16 L.Ed.2d at 5-6. Within a few months after this decision was handed down, our Legislature amended its L. 1962, c. 165 definition of obscenity so as to embody the three-pronged test set forth by Justice Brennan in the Memoirs case. L. 1966, c. 199; N.J.S.A. 2A:115-1.1. In G.P. Putnam's Sons v. Calissi, 50 N.J. 397 (1967), we reversed a lower court holding that the book dealt with in Memoirs was obscene; in our per curiam we simply stated that under the aforementioned three-pronged test the book was protected from governmental suppression by the First and Fourteenth Amendments. 50 N.J. at 398.
In 1969 our Legislature established a "Commission to Study Obscenity and Depravity in Public Media." The Commission conducted hearings and rendered its report in *466 1970. In 1971 the Legislature passed L. 1971, c. 449 (N.J.S.A. 2A:115-1.1) which in effect abandoned the three-pronged test set forth in L. 1966, c. 199 and reverted to the definition in L. 1962, c. 166. The statement attached to the bill indicated that there had been local dissatisfaction with the three-pronged test, particularly its requirement that the material be "utterly without redeeming social value," and that the legislative desire was to restrict the distribution of obscene materials to the full extent permitted by the Constitution as expounded by the Supreme Court. In Cine-Com Theatres Eastern States, Inc. v. Lordi, 351 F. Supp. 42 (D.N.J. 1972), a three-judge court, sitting in the United States District Court for the District of New Jersey, declared L. 1971, c. 449 to be unconstitutional in that it failed to satisfy the three-pronged test of Memoirs. But cf. State v. Shapiro, 122 N.J. Super. 409 (Law Div. 1973); Coleman v. Wilson, 123 N.J. Super. 310 (Ch. Div. 1973). In Hamar Theatres, Inc. v. Cryan, 365 F. Supp. 1312 (D.N.J. 1973), cert. granted, 416 U.S. 954, 94 S.Ct. 1967, 40 L.Ed.2d 304 (1974), two of the three judges who sat in Cine-Com again held L. 1971, c. 449 to be unconstitutional as failing to meet not only the three-pronged test of Memoirs but also the new obscenity test of Miller v. California, supra, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419.
In Miller, supra, the defendant was convicted under the California obscenity statute for mailing brochures which consisted mainly of pictures and drawings "very explicitly depicting men and women in groups of two or more engaging in a variety of sexual activities, with genitals often prominently displayed." 413 U.S. at 18, 93 S.Ct. at 2611, 37 L.Ed.2d at 427. In vacating the judgment and remanding for further proceedings, the Supreme Court rejected the three-pronged test of Memoirs and announced a reformulated test of obscenity in which five members of the Court concurred. Under the reformulated test, in order to find obscenity the trier of fact must determine (1) that the average person applying contemporary community standards *467 would find that the work, taken as a whole, appeals to the prurient interest, (2) that it depicts or describes in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (3) that the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. Illustrating what may satisfy the second requirement, the Court gave the following nonexclusive examples: "(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, (b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." 413 U.S. at 25, 93 S.Ct. at 2615, 37 L.Ed.2d at 431.
In the course of his dissents from Miller and its related cases, Justice Brennan abandoned the three-pronged test of Memoirs but also rejected the reformulation by the majority in Miller. He would hold that "at least in the absence of distribution to juveniles or obtrusive exposures to unconsenting adults, the First and Fourteenth Amendments prohibit the state and federal governments from attempting wholly to suppress sexually oriented materials on the basis of their allegedly `obscene' contents." Paris Adult Theatre I v. Slaton, supra, 413 U.S. at 113, 93 S.Ct. at 2662, 37 L.Ed.2d at 490. He was joined by Justices Stewart and Marshall; Justice Douglas, who filed his own dissenting opinion, would hold that obscene publications as well as the nonobscene are fully protected by the First and Fourteenth Amendments. 413 U.S. at 37-47, 93 S.Ct. at 2622-2627, 37 L.Ed.2d at 439-444.
Since Miller was handed down the Supreme Court has had occasion to apply it in Hamling v. United States, ___ U.S. ___, 94 S.Ct. 2887, 40 L.Ed.2d ___ (1974). See also Jenkins v. Georgia, ___ U.S. ___, 94 S.Ct. 2750, 40 L.Ed.2d ___ (1974). A bare majority of the Court found that the federal obscenity statute (18 U.S.C. § 1461) had, well prior to Miller, been "authoritatively construed in a manner consistent with Miller" (94 S.Ct. at 2905) and that consequently the defendant had fair notice and due warning *468 though his conviction preceded Miller. Doubts may be expressed as to whether the few cases it relied on truly support its finding, but that need not be pursued here since the federal obscenity statute is not our present concern. Cf. Ginzburg v. United States, 383 U.S. 463, 476-501, 86 S.Ct. 942, 16 L.Ed.2d 31, 41-55 (1966) (dissenting opinions); Note, "The Supreme Court 1965 Term," 80 Harv. L. Rev. 91, 192-194 (1966); Note, 75 Yale L.J. 1364, 1382-1394 (1966).
In the light of Miller, many state courts have had occasion to review their statutes and convictions thereunder. Varying results have been reached in the states and they may briefly be set forth for such guidance as they may furnish. Several state courts have held that their obscenity statutes, as theretofore judicially construed in their own states, satisfied the current Miller test. See, e.g., People v. Heller, 33 N.Y.2d 314, 352 N.Y.S.2d 601, 307 N.E.2d 805 (1973); State ex rel. Keating v. "Vixen", 35 Ohio St.2d 215, 301 N.E.2d 880 (1973); State ex rel. Wampler v. Bird, 499 S.W.2d 780 (Mo. 1973); State v. J-R Distributors, Inc., 82 Wash.2d 584, 512 P.2d 1049 (1973); Price v. Commonwealth, 214 Va. 490, 201 S.E.2d 798 (1974). Some of these holdings were accompanied by dissents which stressed that although Miller discarded the Memoirs requirement that the materials be utterly without redeeming social value, it imposed a requirement that the state law specifically define the "hard-core sexual conduct" that is prohibited. See Jones, J., dissenting in Heller, supra, 352 N.Y.S.2d 601; 307 N.E.2d at 817-820; Seiler, J., dissenting in Wampler, supra, 499 S.W.2d at 784; Utter, J., dissenting in J-R Distributors, Inc., supra, 512 P.2d at 1090-1093.
Several state courts have stricken their obscenity statutes as unconstitutional, largely because they did not specifically define the prohibited hard-core sexual conduct as required by the formulation set forth in Miller, See, e.g. Commonwealth v. Horton, ___ Mass. ___, 310 N.E.2d 316 (1974); Stroud v. State, Ind., 300 N.E.2d 100 (1973); State v. *469 Wedelstedt, Iowa, 213 N.W.2d 652 (1973); State v. Shreveport News Agency, Inc., La., 287 So.2d 464 (1973). In Horton the defendants were convicted of having possessed and sold obscene magazines. They were tried under the Memoirs standards and duly appealed, contending that in view of Miller their convictions could not stand. The Supreme Judicial Court of Massachusetts set aside their convictions in an opinion which declined to read the Miller standards into the state obscenity statute. In the course of his opinion, Justice Wilkins pointed out that the Massachusetts statute did not specifically define the sexual conduct whose portrayal was barred and that the earlier Massachusetts decisions fell "far short of the degree of definitiveness" called for by Miller. 310 N.E.2d at 321.
The Massachusetts court rejected the suggestion that it incorporate the Miller standards prospectively and thereby avoid a total gap in obscenity regulation without unfairly entailing any retroactive application. It expressed the thought that this would constitute a "judicial rewriting" of the statute and it concluded that "if there is to be regulation in the Commonwealth in the area of the sale or showing of pornographic works to adults, it must be achieved by explicit new legislation." 310 N.E.2d at 322. Other courts have pursued a different course; while recognizing that their statutes failed to meet the specificity requirement of Miller and could therefore not be invoked to sustain prior criminal convictions, they construed them as thereafter incorporating the Miller standards and thereby validated them prospectively. See State v. Welke, Minn. 216 N.W.2d 641 (1974); State v. Harding, N.H., 320 A.2d 646 (1974); cf. Papp v. State, 281 So.2d 600 (Fla. App. 1973).
In Welke the defendant was convicted of selling an obscene magazine in violation of an ordinance. He was convicted under the standards of Memoirs, but while his appeal was pending the Supreme Court replaced Memoirs with the standards set forth in Miller. The Minnesota Supreme Court held that his conviction was invalid since the Miller requirement of *470 specific definition of the prohibited hard-core sexual conduct had not been met. As the Minnesota court put it, the conviction could not stand because the defendant "did not have that clear notice of the legislative proscription which fundamental fairness requires. The necessity of a clear warning is particularly important, moreover, when a line is to be drawn between protected and unprotected speech." 216 N.W.2d at 648.
Unlike Horton, supra, ___ Mass. ___, 310 N.E.2d 316, the Minnesota court in Welke construed the ordinance prospectively in a manner which rendered it thereafter constitutional. It did so because it found "a clear legislative intent to proscribe obscenity to the extent consistent with constitutional limitations." 216 N.W.2d at 645. The precise holding was in terms which brought the ordinance strictly within the constitutional requirements of Miller. Thus the court construed the word "obscene" as used in the ordinance and in state statutes as embracing publications which are patently offensive representations or depictions of ultimate sexual acts and patently offensive descriptions of masturbation, excretory functions, and lewd exhibition of the genitals. And it held that a defendant may be convicted if the trier of fact finds from the evidence (1) that the material depicts or describes such sexual conduct in a patently offensive way, (2) that, applying contemporary community standards, the dominant theme of the material, taken as a whole, appeals to the prurient interest of the average person, and (3) that the material, taken as a whole, lacks serious literary, artistic, political, or scientific value. 216 N.W.2d at 646-647.
In Harding the State of New Hampshire charged the defendant with the sale of obscene magazines. The defendant moved to dismiss on the ground that the New Hampshire obscenity statute, which was based generally on Model Penal Code draft proposals and Memoirs standards, was unconstitutional under Miller. The trial court submitted to the New Hampshire Supreme Court separate inquiries as to *471 the standards and constitutionality of the statute, and a final inquiry as to whether the standards were to be applied to this defendant. The New Hampshire court in its discussion of Miller pointed out that while Miller lessened the burden of proof for the prosecution, it required that the prohibited subject matter be specifically defined by state law; it appropriately noted that "The purpose of such specificity is to avoid the chilling effect of general language on legitimate activities protected by the first amendment and to provide fair notice as to what materials are subject to regulation." 320 A.2d 649.
The New Hampshire court, after pointing out that Miller and its related cases "clearly limit the area of regulation to representations or depictions of `patently offensive "hard core" sexual conduct'" (413 U.S. at 27, 93 S.Ct. 2607, 37 L.Ed.2d at 432), proceeded to review its statutory provisions to determine whether they satisfied the requirement of specificity. By reading into its statutory provisions enough to meet Miller it was enabled to uphold the constitutionality of the statute prospectively, with enumerated categories "sufficiently concrete to describe patently offensive `sex' or `sexual conduct' and to provide fair warning under Miller." 320 A.2d at 651. Although the constitutionality of the statute was upheld prospectively, the court concluded that it was not correct "to say that the defendant had sufficient warning under the Roth-Memoirs test as to the obscene nature of the materials in issue. See State v. Welke, Minn. 216 N.W.2d 641 (1974); United States v. Lang, 361 F. Supp. 380, 382 (D. Cal. 1973); see Coates v. Cincinnati, 402 U.S. 611, 614, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); Bouie v. Columbia, 378 U.S. 347, 352-353, 362-363, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964)." 320 A.2d at 652. Accordingly it directed that the charge against the defendant be dismissed. 320 A.2d at 652.
We are persuaded that the course taken in Welke and Harding is the fairest one and should be followed in the *472 consolidated appeals before us. The statute under which the defendants were convicted satisfied Memoirs but did not meet the specificity requirement of Miller; nor did our judicial precedents satisfy Miller's demand that the prohibited hard-core sexual conduct be "specifically defined by the applicable state law, as written or authoritatively construed." 413 U.S. at 24, 93 S.Ct. at 2615, 37 L.Ed.2d at 430. Indeed our precedents have consistently avoided such particularization in favor of more generalized prohibitory standards. See State v. Hudson County News Co., supra, 41 N.J. at 254-256; State v. Feffer, 41 N.J. 271 (1963); G.P. Putnam's Sons v. Calissi, supra, 50 N.J. 397; cf. State v. Shapiro, supra, 122 N.J. Super. 409; Coleman v. Wilson, supra, 123 N.J. Super. 310.
Neither our statute nor our precedents gave the defendants the fair notice and due warning required by Miller; accordingly their convictions must be set aside. See State v. Welke, supra, 216 N.W.2d at 648; State v. Harding, supra, 320 A.2d at 652. And since our current obscenity statute (L. 1971, c. 449) does not in literal terms satisfy Miller (see Cine-Com Theatres Eastern States, Inc. v. Lordi, supra, 351 F. Supp. 42; Hamar Theatres, Inc. v. Cryan, supra, 365 F. Supp. 1312) it cannot withstand constitutional attack unless we now judicially salvage it by incorporating the Miller requirements. Of course the ultimate policy determinations as to what, if any, obscenity regulations affecting consenting adults should be adopted are for the Legislature (cf. State v. Rosenfeld, 62 N.J. 594, 603 (1973)); and it is entirely likely that the Legislature will expeditiously deal with the subject in the light of all of the opinions in Miller and the related and ensuing cases both federal and state. In the meantime, however, we are confronted with the choice of nullifying L. 1971, c. 449, thereby leaving an interim void (as the Massachusetts court did in Horton, supra, 310 N.E.2d 316), or supplying a stopgap constitutional interpretation (as the *473 Minnesota and New Hampshire courts did in Welke, supra, 216 N.W.2d 641 and Harding, supra, 320 A.2d 646). As we have already indicated, we take the latter course which we consider the more consonant with the legislative goals and our precedential judicial expressions. See Camarco v. City of Orange, 61 N.J. 463, 466 (1972); State v. Zito, 54 N.J. 206, 218 (1969); State v. Profaci, 56 N.J. 346, 349-350 (1970); cf. State v. Hudson County News Co., 35 N.J. 284, 294 (1961); Coleman v. Wilson, supra, 123 N.J. Super. at 317.
In Camarco we upheld the action of the Appellate Division in narrowly construing an ordinance so as to render it constitutional; we pointed out that its action "followed traditional judicial principles which have been geared to the fair assumption that the wishes of the legislative body would be furthered by upholding its prospective goals to the extent constitutionally permissible." 61 N.J. at 466. In Zito we read requirements into a statute, noting that "since the Legislature would likely want the statute to remain to the extent that it may, we see no impediment to such judicial surgery as will bring the statute within the Constitution." 54 N.J. at 218. The history of L. 1971, c. 449 leaves no room for doubt that the Legislature which adopted it intended, as did the enacting body in Welke, supra, 216 N.W.2d at 645, "to proscribe obscenity to the extent consistent with constitutional limitations." See N.J.S.A. 2A:115-1.1; N.J.S.A. 2A:115-1.1a.
Pending further legislative action we construe L. 1971, c. 449 in a manner comparable to the construction by the Minnesota Supreme Court in Welke, supra, 216 N.W.2d at 646-647. That construction is referred to earlier in this opinion; it now furnishes adequate notice and warning that "articles and publications which are patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, and patently offensive representations or descriptions of masturbation, excretory functions, *474 and lewd exhibition of the genitals" (216 N.W.2d at 646) are embraced within the word "obscene" as used in L. 1971, c. 449. And we now hold that a defendant may be convicted under the statute if the trier of fact finds from the evidence:
(1) "[t]hat the material depicts or describes, in a patently offensive way, sexual conduct as explicated above;
(2) that to the average person, applying contemporary community standards, the dominant theme of the material, taken as a whole, appeals to the prurient interest in such matters; and
(3) that the material, taken as a whole, lacks serious literary, artistic, political, or scientific value." 216 N.W.2d at 647.
See Miller v. California, supra, 413 U.S. at 24-28, 93 S.Ct. at 2615-2617, 37 L.Ed.2d at 430-433; Note, "The Supreme Court 1972 Term," 87 Harv. L. Rev. 55, 160-175 (1973); Note, "The New Obscenity Standard," 6 Conn. L. Rev. 165 (1973).
No. A-128  Reversed.
No. A-129  Reversed.
For reversal  Chief Justice HUGHES, and Justices JACOBS, MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD  6.
For affirmance  None.