JOHN D. WALLACE, OVERSEER, &c., PLAINTIFF IN ERROR, v. ALFRED A. BRADSHAW, DEFENDANT IN ERROR.

There is nothing in the state constitution that prevents the operation of the common law doctrine that when a repealer is itself repealed the original act is thereby revived.

On error to the Supreme Court.

For the plaintiff in error, *Thomas E. French.*

For the defendant in error, *Robert S. Clymer, David J. Pancoast* and *Grey & Grey.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.   This suit that has produced this writ of error was brought to recover the penalty denounced in section 53 of the act concerning roads (*Rev., p.* 1006) against a citizen who, after notice, refuses to do his quota of work on the public highway.

It does not seem necessary to state in detail either the facts or the statutory regulations connected with the present controversy, inasmuch as the question to be decided is purely an abstract one relative to the meaning of a provision of the constitution of the state.   It will suffice for every purpose of perspicuity to say that section 53 of the act just referred to depends for its efficacy on section 56 of the same statute, and that this latter section was repealed by a supplementary act in the year 1883 (*Pamph. L., p.* 165), and that this repealer was itself subsequently repealed, so that by this series of legislation the problem is now presented whether, in view of the particular polity of this state, section 56 of the Road act was, *ipso facto*, revived by this repeal of the statute that had repealed it.

That such would have been the effect of the untrammeled rule of the common law is not controverted, but the conten-

tion is that such a result is prevented by that provision in our constitution that declares that "No law shall be revived or amended by reference to its title only, but the act revived, or the section or sections amended, shall be inserted at length."

In the Supreme Court this was the construction that was adopted in this case, the grounds assigned for such opinion being that the mischiefs that this constitutional clause was designed to remedy were common to revivals of statutes that were effected by a general reviving act, as well as to those that occurred by operation of law, and that, consequently, both should be held to have been forbidden.

But it seems to me that there is a prerequisite to the judicial right to resort, in the interpretation of the constitution, to a consideration of this kind. That prerequisite is, that the language of the given clause, tested by its terms and its context, is uncertain or ambiguous. When the words have a single and plain signification, there is no place for construction ; they must be judicially accepted and enforced in their literal sense and they cannot be extended by implication. Treating this subject, Judge Cooley says : " Possible, or even probable, meanings, when one is plainly declared in the instrument itself, the courts are not at liberty to search for elsewhere." *Const. Lim.* 55.

In my judgment, this principle applies to and rules the present case.

In discussing this subject, it is well to premise that there are two distinct modes of reviving statutes that have been repealed, the one by legislative enactment, the other by operation of law, as when a repealing act is itself repealed.

Therefore, the question to be decided is, does the constitutional provision now under consideration regulate both or only one of these two methods of revival ? In the Supreme Court it was thought to comprehend both, but I have utterly failed to find such force in its language. The terms used seem to me to admit of no other meaning than that they regulate revivals by statute alone. The phrase that " no law shall be revived or amended by reference to its title alone," cannot be

forced into a signification that will comprehend any revival that is not a statutory one, for there is not and cannot be a revival by operation of law that can be said to operate on the act revived " by reference to its title alone." The clause obviously would have to be interpolated to impart to it that breadth of efficacy claimed for it in the decision before us. Thus, it would be necessary to transmute it into some such form as this : " No law shall be revived by operation of law, nor shall it be revived or amended by reference to its title alone ;" and the harmony that would exist in the sentence thus constructed, and its freedom from all tautology, would seem to demonstrate that these methods of revival are diverse and distinct things, and that only one of them is embraced in this constitutional expression.   I cannot agree to the proposition, that because the people, in their constitution, have declared that a law shall not be revived by a statutory reference to its title, that they have thereby likewise declared that it shall not be revived by the operation of a well-known rule of the common law.   And this is plainly the sense in which the provision was expounded by Mr. Justice Dixon, in the case of *Van Riper* v. *Parsons*, reported in 11 *Vroom* 127, his language being as follows, viz. : " Our constitution does not cover repealing acts at all, and was designed to apply only to such enactments as are *in terms*, revivals or amendments of specified statutes and sections."

Being of opinion that the provision in question has, by its clear verbal force, this limited effect, it seems to me that this court has not the legal competence to give it any further efficacy.

The decision in *Reuter* v. *Bauer*, 3 *Kan.* 503, which is cited as having an aspect adverse to the foregoing view, is deemed not to be in point, for the language therein interpreted is materially variant from that now under criticism.   But while this case does not seem to be pertinent, the history of the constitutional clause to which it relates is of some significance in our present inquiry.   In the Kansas constitution, as originally fashioned in 1855, the clause in question was substantially

similar in phraseology with that of our own, reading, " No act shall ever be revived or amended by mere reference to its title," &c., but in the year 1859 this language was transformed into the expression " that no law shall be revived or amended unless," &c. No reason appears for this alteration, except upon the theory that the description, as it originally stood, forbade revivals of a prescribed kind—that is, revivals by statutes referring only to the title of the revived law—and hence its abandonment and the introduction of terms of wider import. It was this enlarged phraseology that the Kansas court interpreted, while it is the more specific and narrower expression that it is our province to expound.

Another consideration which is thought to be of great moment in favor of the foregoing view is, that it is in harmony with the opinions on the subject heretofore entertained by the legislature, the executive and by the entire judiciary of the state. No one can even glance at the statute books and fail to perceive that such has always been the practical exposition of this constitutional provision. This is so completely the case that it may be doubted whether an instance can be found where there has been a re-enactment of a repealed law, the repealer of the same having been repealed. In such situations it seems to have been the invariable course to rely for the revival of the original act on the force of the last repealing act ; and this practice of legislation has so long prevailed that the establishment, at this late day, of a doctrine rendering this multitude of laws invalid would be attended with the utmost confusion and embarrassment. I cannot hesitate to say that, in my opinion, a number of private titles would be jeoparded and many public interests embroiled or subverted. I am afraid that the laws affecting our taxes and municipalities would be disastrously disturbed. I have made no elaborate study with respect to the extent of the evils that would probably result from this cause, but upon almost casually opening the statute book have chanced upon a few illustrations. In the year 1879, an act was passed establishing, in minute schedules, the fees of county clerks and registers of

·deeds and mortgages and repealing all inconsistent laws, and in 1882 this act was revoked by a general repealer. On the doctrine that the primary act was not revived by intendment of law, there is not now, and has not been for a number of years past, any statute awarding to these important classes of officers any compensation for their services. So, I find by a similar course of legislation that sheriffs stand in the same precarious situation; that many of the licenses to keep inns and to sell beer and liquor are similarly invalid, and that in all probability there is not an overseer of the highways in the state that holds his office by an incontestible tenure; and it may well be claimed, that since the law constituting commis-sioners of juries was repealed no jury, grand or petit, has ever been legally organized in any court in this state. And these are the laws, and a multitude of others of a similar charac-ter, that have been enacted by the legislature and have been ·enforced by the judiciary on the theory that the rule of the ·common law was in force in this state, and that when a repealing law was itself repealed the original law was thereby revivified.

I have said that I consider the decision now on review ·erroneous on the ground that it is opposed to the plain lan-guage of the constitution; but if I had any doubt on that ·subject I should conclude that such decision ought not to be permitted to prevail, as it is inconsistent with all that is worthy of the name of contemporaneous exposition, and with the long continued opinion, evidenced by their practice, of the legislative, executive and judicial departments of the government. In my apprehension, if there ever was a case it is the present one to which the maxim should be applied, *"Optimus legis interpres consuetudo."*

I shall vote to reverse the judgment.

*For affirmance*—None.

*For reversal* — THE CHANCELLOR, CHIEF JUSTICE, MAGIE, REED, VAN SYCKEL, BOGERT, BROWN, CLEMENT, SMITH. 9.