**HAMAR THEATRES, INC., Plaintiff,**

v.

**John CRYAN, Individually and as Sheriff of Essex County, State of New Jersey, et al., Defendants.**

**C & V THEATRE CORPORATION, and Edward N. Wilson, Jr., Plaintiff,**

v.

**James M. COLEMAN, Jr., Individually and as County Prosecutor of Monmouth County, State of New Jersey, et al., Defendants.**

**Howard A. WEIN and Philip J. Guarino, Plaintiffs,**

v.

**TOWN OF IRVINGTON et al., Defendants.**

Civ. A. Nos. 472–73, 496–73 and 585–73.

United States District Court,
D. New Jersey,
Civil Division.
July 26, 1973.

Podvey & Sachs by Robert L. Podvey, Newark, N. J., for plaintiff, Hamar Theatres, Inc.

Michael S. Sodowick, Charles V. Litt, Newark, N. J., for plaintiffs, C & V Theatre Corp. and Edward N. Wilson, Jr.

Stern & Weiss by Harvey L. Weiss, Maplewood, N. J., for plaintiffs, Howard A. Wein and Philip J. Guarino.

David S. Baime, Deputy Atty. Gen., State of New Jersey, Div. of Crim. Justice, East Orange, N. J., for defendant, Attorney General of New Jersey, George F. Kugler.

Ralph J. Jabbour, Asst. Prosecutor, Newark, N. J., for defendant, Joseph P. Lordi, Essex County Prosecutor.

Allen MacDuffie, Jr., County Prosecutor, Freehold, N. J., for defendant, James M. Coleman, Monmouth County Prosecutor.

Daniel A. Rosenberg, Legal Asst. Prosecutor, Irvington, N. J., for defendants, Town of Irvington and others.

Before ADAMS, Circuit Judge, and BARLOW and GARTH, District Judges.

GARTH, District Judge:

This action was commenced by the filing of three separate complaints in April of 1973,[1] all of which challenged the constitutionality of the New Jersey anti-obscenity statute, N.J.S. 2A:115–1 et seq. as well as procedures followed in each action by state, county or municipal authorities in seizing films or publications thought to be obscene. Jurisdiction was based on 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3). Following hearings on each of the three complaints concerning the necessity of convening three-judge panels, this three-judge court was convened pursuant to 28 U.S.C. §§ 2281 and 2284 to consider the three actions as a consolidated matter.[2] A consolidated amended complaint was filed in July of 1973.

## PARTIES

Plaintiff Hamar Theatres, Inc., a New Jersey corporation, operates a motion picture theater known as the Treat Theatre in Newark, New Jersey. Hamar has in the past exhibited sexually oriented adult films and intends to continue such exhibitions in the future. It is uncontested that on April 5, 1973, a certain film entitled "Fast Ball" then being exhibited at the Treat Theatre, was seized by Essex County Sheriff's detectives under the direction of Essex County Sheriff John Cryan and Essex County Prosecutor Joseph P. Lordi, both defendants in this action. The films were seized pursuant to a search warrant issued by the Honorable Ralph L. Fusco, New Jersey Superior Court Judge, on the strength of an affidavit of a Sheriff's detective. Prior to the seizure, Judge Fusco had not seen the film. Moreover, no prior adversary hearing was held as to the propriety of the seizure. The search warrant mentioned no individuals and was not issued in conjunction with any criminal complaint. No criminal complaints or indictments were returned

---

1. Hamar Theatres, Inc. v. Cryan et al., Civ. No. 472–73, filed April 6, 1973; C & V Theatre Corporation v. Coleman et al., Civ. No. 496–73, filed April 11, 1973; Wein & Guarino v. Town of Irvington et al., Civ. No. 585–73, filed April 30, 1973.

2. Pending the hearing of the applications by a three-judge panel, defendants were restrained from instituting any contemplated criminal proceedings against the individual plaintiffs. Orders of April 27, 1973 and April 30, 1973. No restraints were issued against currently pending criminal prosecutions. When the

three-judge panel convened on June 1, 1973, the restraining orders of April 27 and April 30 were continued as to the class of plaintiffs certified on that date. See opinion p. 1318 infra. Following the decision of the United States Supreme Court in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), the Essex County Prosecutor, joined by the State Attorney General, moved to vacate the then-existing restraints. Oral argument was heard on July 19, 1973, and decision reserved. The defendants' motion is denied in light of the determination herein.

prior to the commencement of Hamar's separate action (now consolidated herein) against the Essex County Sheriff, Prosecutor, and the New Jersey Attorney General.

Prior to the April 1973 seizure, plaintiff Hamar had experienced other film seizures by the Essex County authorities. As a result of a seizure in May 1972, plaintiff Hamar pleaded guilty to an accusation of "Maintaining a Nuisance." On March 5, 1973, the film "Deep Throat" was seized by defendants under the authority of a Newark Municipal ordinance without a prior adversary hearing. Following alleged harassment by the defendants and the issuance of a federal court order restraining defendants from further harassment of the plaintiff Hamar, the plaintiff pleaded guilty to violations of the Newark Municipal Ordinance dealing with obscenity. Although there are currently no criminal actions proceeding against Hamar, the past seizures have allegedly caused great perturbation among Hamar's employees and have disrupted its business.

Plaintiff Hamar intends to continue exhibition of the same genre of sexually oriented adult films. Among other relief, Hamar seeks a declaratory judgment invalidating the New Jersey anti-obscenity statute. Hamar also seeks an order enjoining the defendants from enforcing this anti-obscenity statute in any fashion, and in particular, a preliminary injunction prohibiting defendants from making unconstitutional seizures of the films it is and will be exhibiting.[3]

Plaintiff C & V Theatre Corporation also operates a theater which exhibits sexually oriented adult films. On March 6, 1973, Monmouth County officers seized the film "Deep Throat", then being exhibited at its theater. A criminal prosecution against the plaintiff C & V has been commenced based upon the exhibition of "Deep Throat" and is currently pending in the New Jersey state courts. No relief is sought here with respect to that seizure and criminal prosecution. Tr. June 1, 1973 at 18. Plaintiff C & V alleges, however, that subsequent to the "Deep Throat" incident, the Monmouth County officials who had been made defendants in C & V's initial separate complaint, and who now appear as defendants in the consolidated amended complaint, informed C & V that they would continue to review the sexually oriented adult films to be exhibited in plaintiff's theater and would seize films considered obscene with a view toward appropriate criminal proceedings. Plaintiff C & V seeks the same relief requested by the plaintiff Hamar.

Plaintiffs Wein and Guarino, are owners and operators of a book store known as "Best Adult Book Store" located in Essex County, Irvington, New Jersey, in which sexually oriented adult books, films, magazines and novelties are exhibited and sold. On April 25, 1973, it is alleged that a member of the Irvington Police Department, without advising plaintiffs that he was a police officer, purchased a magazine from defendants, left, and a few minutes later returned with some other police officers who this time identified themselves as such and demanded that plaintiffs return the marked bill with which the initial purchase of the magazine had been made. On April 26, 1973, plaintiffs were served with criminal complaints charging them with violations of the New Jersey anti-obscenity statute, which complaints are still pending. Tr. June 1, 1973 at 17, 18. Plaintiffs allege that they were told by the Deputy Chief of the Irvington Police Department that if they were to remain open for business, the Irvington Police Department would issue daily criminal complaints against them under the New Jersey anti-obscenity statute. Plaintiffs allege similar representations were made to them by other Irvington law enforcement officials. Plaintiffs seek basically the same relief against the Irvington municipal law enforcement

---

3. Hamar also seeks to have its print of "Fast Ball" returned and to be awarded costs.

officials, the Essex County Prosecutor and the Attorney General of New Jersey as is sought by the plaintiffs Hamar and C & V against their respective defendants.[4] Plaintiffs Wein and Guarino also seek to restrain defendants from further prosecution of the criminal complaints presently outstanding against them.

■ To the extent that relief is sought by Wein and Guarino against the Town of Irvington, the Municipal Court of the Town of Irvington, and the Town of Irvington Police Department, this court has no jurisdiction under 42 U.S.C. § 1983 to consider the matter and these defendants shall be dismissed from the action. City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973).

At oral argument on June 1, 1973, all parties agreed that no evidence other than the stipulations already filed with the court, would be presented and that the June 1, 1973 argument would constitute the final hearing before the three-judge panel in this action.[5]

Also at oral argument this panel granted a motion by the plaintiffs to proceed as a class with respect to the constitutionality of the challenged anti-obscenity statute. The panel denied so much of that motion as sought to establish or to have certified a class as to the allegedly illegal seizure procedures which were found to vary considerably

---

4. Allegations in Wein and Guarino's complaint pertaining to the seizure of novelties and a claim for damages were abandoned in oral argument before the panel on June 1, 1973, Tr. at 14–16.

5. See Tr. of June 1, 1973, at 3.
 The stipulation between the plaintiff Hamar Theatres and the defendants provides:
 "1. There is no uniform statewide policy regarding the seizure of allegedly obscene materials without a prior adversary hearing.
 2. On April 5, 1973, at approximately 3:55 P.M., Sheriff's detectives, acting under the direction of defendants Cryan and Lordi, entered the Treat Theatre, Newark and seized the 35 mm color motion picture, "Fast Ball". This action was taken pursuant to a search warrant issued April 5, 1973, by the Honorable Ralph L. Fusco, Judge of the Superior Court of New Jersey. Judge Fusco issued the warrant after perusing the affidavit of Detective James Casey of the Essex County Sheriff's Department (which affidavit purported to detail the contents of the motion picture, "Fast Ball"). The Judge did not view the film or hold an adversary hearing."
 The stipulation between Wein and Guarino and the defendants provides:
 "1. There is no uniform statewide policy regarding seizure of allegedly obscene materials without a prior adversary hearing.
 2. On April 25, 1973, a member of the Irvington Police Department purchased a magazine and three novelties from the Best Adult Book Store located at Prospect Avenue and 43rd Street, Irvington, New Jersey, for the sum of $10.-51. The officer tendered a $10.00 bill and $1.00 bill to plaintiffs Wein and Guarino and received change. He then left the premises but returned a few minutes later with two other police officers who, after identifying themselves, told Wein and Guarino that they would [sic] charged for selling obscene material and asked that they appear at the police station at 10:00 A.M. the following day, April 26, 1973. They also advised them that the $10.00 bill was marked and demanded that it be returned to them, which plaintiffs did. The following morning the materials were examined by Alfred R. Kinney, Judge of the Irvington Municipal Court who, after determining that there existed probable cause to believe that the materials were obscene and were sold by plaintiffs contrary to law, ordered that warrants issue for their arrest. Complaints were filed and served and Wein and Guarino were arraigned before Judge Kinney. They then entered pleas of not guilty and waived a preliminary hearing. The matter was thereafter referred to the Essex County Prosecutor's Office for presentment to the Essex County Grand Jury."
 C & V reserved the right to adduce evidence with respect to seizure procedures should it become necessary. Tr. of June 1, 1973, at 12.

in each case and thus to present different factual and legal issues best resolved on a case-by-case basis. The class certified by this panel under Rule 23(b)(2) was the class of all movie theater operators in the State of New Jersey that exhibit "X"-rated and/or sexually oriented adult films and the class of all bookstore owners in the State of New Jersey that sell sexually oriented adult books and magazines.

## STANDING

Defendants contend that the plaintiffs do not have standing to challenge the New Jersey anti-obscenity statute since the statute, as written, will not be enforced against the plaintiffs. After a three-judge panel for the District of New Jersey declared N.J.S. 2A:115–1.1 invalid on November 20, 1972 because of the failure of that statute to include "utterly without redeeming social value" in its definition of obscenity, Cine-Com Theatres Eastern States, Inc. v. Lordi, 351 F.Supp. 42 (D.N.J.1972), the Attorney General of the State of New Jersey modified the State's enforcement policy so as to include the "social-value" test in the definition of obscenity when applying N.J.S. 2A:115–1 et seq. to prosecutors' investigations, arrests, and indictments.[6] Defendants argue that since plaintiffs will be investigated, arrested and indicted under a standard which received constitutional approval in Cine-Com, and since all formal prosecutions will be held in abeyance pending the determination of Cine-Com which is now on appeal before the Third Circuit,[7] plaintiffs are not subject to any direct injury as a result of the enforcement of the statute under the Attorney General's policy, and therefore, under the doctrine of Poe v. Ullman, 367 U.S. 497, 504, 81

S.Ct. 1752, 6 L.Ed.2d 989 (1961), they do not have standing to challenge its validity.

██ Defendants' argument is without merit. Unlike the situation in Poe v. Ullman, in which Connecticut's anti-contraceptive statute had been enforced against only two doctors and one nurse (in 1940) since its enactment in 1879, and there existed no prospect of its enforcement against the plaintiffs therein, there is no question that New Jersey's anti-obscenity statute has been and will be enforced—under one interpretation or another—against the within plaintiffs. That the standard applied by the prosecutor's office under its new enforcement policy may be constitutional is irrelevant to the question of standing. Standing is accorded to petitioners to challenge a statute where they are subject to its enforcement, and where they can demonstrate that they are directly affected thereby. Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968). The direct effect to which petitioners may be subject does not depend upon the constitutionality of the statute but rather upon the practical nexus between its enforcement and the petitioners' activities or livelihood; consideration of the constitutionality of the enforcement policy or the statute itself must be reserved for the consideration of the case on its merits once the issue of standing has been independently resolved.

Plaintiffs herein have alleged sufficient facts to demonstrate that they will be directly and adversely affected by the continued enforcement of the statute in any guise, and are therefore entitled to standing. See Cine-Com, supra, 351 F. Supp. at 44, 45. The fact that prosecu-

---

6. Various ingenious justifications are offered by the defendants in defense of their reading the "social-value" test into N.J.S. 2A.115–1.1 (Supp.1973) in spite of the fact that this aspect of the definition of obscenity had been explicitly expunged by the New Jersey Legislature from the statute. See Cine-Com, supra,

351 F.Supp. at 48, 49; N.J.S. 2A:115–1.1a (Supp.1973). The propriety of the State's new enforcement policy, in any event, does not bear upon the standing issue as the textual discussion will demonstrate.

7. Tr. of June 1, 1973, at 36, 37, 56, 57.

tions may be held in abeyance under the present enforcement policy does not dilute the stake that the present plaintiffs have in the outcome of this litigation.[8] Investigations, seizures and indictments of theater operators and bookstore owners for the exhibition and/or sale of allegedly obscene materials possess, in themselves, a sufficient disruptive potential of plaintiffs' businesses to afford them standing. The pendency of such prosecutions in themselves may chill the exercise of First Amendment rights.

## YOUNGER ABSTENTION

Defendants contend that at least with respect to three of the named plaintiffs, —C & V Theatre Corporation, Wein and Guarino—this Court should defer to a State court determination of plaintiffs' claims as a matter of equitable abstention under Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). As to C & V, although in this action it does not challenge its pending prosecution by the State for its exhibition of "Deep Throat", defendants argue that it cannot thereby escape the logic of *Younger*. Defendants point out that C & V occupies the identical position occupied by Dr. Hallford in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d

147 (1973). Dr. Hallford in *Roe* had sought to "distinguish his status as a *present* state defendant from his status as a 'potential *future* defendant.' " The Supreme Court rejected that distinction and remitted Dr. Hallford to his defenses in the state criminal proceedings. Specifically, however, the Supreme Court did not consider the question of "what different result, if any, would follow if Dr. Hallford's intervention were on behalf of a class." 93 S.Ct. at 714.

 The fact that the present action is a class action modifies to a certain extent the usual *Younger* considerations. First, it should be noted that as to the plaintiff Hamar, *Younger* abstention is inappropriate since no criminal prosecution is pending against it.[9] Lewis v. Kugler, 446 F.2d 1343 (3d Cir. 1971). It would prove anomalous to grant relief to Hamar and to the class of theater owners of which Hamar is a representative excepting therefrom only the plaintiff C & V as to *future* prosecutions merely because a prosecution is currently pending against it. Where such class relief is sought, it furthers the purposes of class adjudication to distinguish between C & V's status as a present criminal state defendant and its status as a potential future defendant.

8. Should plaintiffs exercise their right to speedy trials under outstanding indictments held in abeyance, Strunk v. United States, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973); Barko v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), they face the prospect—decreased, perhaps, since the Supreme Court's opinion in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973)—of an adverse judicial determination under an interpretation of the statute declared unconstitutional in *Cine-Com, supra. See, e. g.*, State v. Shapiro, 122 N.J.Super. 409, 300 A.2d 595 (Law Div., 1973).

9. We regard the seizure of the film "Fast Ball" as an evidentiary seizure and not as the commencement of a prosecution in the *Younger* sense. The warrant did not name any individuals, nor was it issued in conjunction with any kind of criminal process. In such a situation, there is no

assurance that an individual from whom such property is seized will have the opportunity to challenge the constitutionality of the state proceeding or the statute under which such seizure was authorized because no criminal proceeding may ensue. *See* Conover v. Montemuro, 477 F. 2d 1073 (3d Cir. filed Dec. 20, 1972), resubmitted en banc March 29, 1973 (filed May 8, 1973). It is not sufficient to argue for purposes of *Younger* abstention that such individuals could raise these questions in state court proceedings for return of their property or for a declaratory judgment. Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 510, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); Zwickler v. Koota, 389 U.S. 241, 248, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). *Younger* has no application where no state prosecution is pending. Lewis v. Kugler, 446 F.2d 1343, 1347 (3d Cir. 1971).

Relief may be prescribed as to the effect and validity of N.J.S. 2A:115–1 et seq. equally with respect to the class of all theater owners that exhibit sexually-oriented or "X"-rated adult films and all bookstore owners who sell sexually oriented adult books and magazines without interfering with the proper course of pending state prosecutions against individual plaintiffs by limiting such relief to *prospective* matters only. Restricting class relief in this fashion accommodates the interests of class adjudication on the one hand [10] without doing violence to the principles of comity on the other.[11]

As to the plaintiffs Wein and Guarino, they occupy a slightly different position than C & V since they actively seek an injunction against the prosecution currently pending against them. In view, however, of our accommodation of *Younger* interests to class action interests, we find this to be a "distinction without a difference." Relief may be granted with respect to prospective proceedings threatened against Wein and Guarino, but the plaintiffs Wein and Guarino will be remitted to their defenses in the pending state proceedings against them.[12]

## PULLMAN ABSTENTION

Defendants argue that this Court should abstain from deciding the constitutionality of N.J.S. 2A:115–1.1 (Supp. 1973) under the doctrine enunciated by Justice Frankfurter in Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) because the statute is susceptible to a "saving construction" that would avoid or modify the constitutional question presented.[13]

10. The purport of Rule 23(b)(2) of the Federal Rules of Civil Procedure is to render possible declaratory and/or injunctive relief as to an entire class where the question of the legality of behavior of one party (the State, for example) vis-a-vis that class is unsettled. *See* Advisory Committee Notes to 1966 Amendments of the F.R.C.P. That purpose would be thwarted to the extent that class relief would obtain for all members of the class except those with state prosecutions currently pending against them. Assuming for the moment that this Court were to enjoin the future enforcement of the New Jersey anti-obscenity law against a class which did not include *"Younger"* plaintiffs, the State would still be free to prosecute such individuals in future prosecutions while at the same time it was enjoined from prosecuting all other members of the class. But as to *future* prosecutions, *"Younger"* plaintiffs stand in precisely the same status as do members of the class of those against whom future prosecutions may be imminent but against whom no present prosecutions are pending.

11. We intimate no opinion here as to the propriety of such an accommodation were criminal proceedings pending against all the named representatives of the class.

12. Plaintiff Wein and Guarino allege that the prosecutions have been instigated against them in bad faith so as not to secure valid convictions, but rather to put plaintiffs out of business. If sup-

ported by proper proofs, such allegations would present another exception to *Younger*, and no equitable abstention would need to be exercised with respect to pending state proceedings. The record presently before us, however, does not support such abstention. As was stated in Lewis v. Kugler, 446 F.2d 1343, 1349 (3d Cir. 1971) ; "[T]here is no indication that defense of the state criminal prosecution will not assure adequate vindication of their [the plaintiffs in the federal action] constitutional rights. The injury that they face is solely 'that incidental to every criminal proceeding brought lawfully and in good faith,' and they are therefore not entitled to equitable relief."

The issue of illegal seizure (Lee Art Theatre v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968) and, most recently, Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973)) must also be raised in the state criminal proceeding by plaintiffs Wein and Guarino.

13. N.J.S. 2A:115–1.1 (Supp.1973) provides:
"Obscene" defined
"The word 'obscene' wherever it appears in the chapter to which this act is a supplement shall mean that which to the average person, applying contemporary community standards, when considered as a whole, has as its dominant theme or purpose an appeal to prurient interest.
Amended by L.1971, c. 449, § 3, eff. Feb. 16, 1972."

On November 20, 1972, a three-judge panel for the District of New Jersey invalidated the identical statute challenged here, and in so doing, determined that *Pullman*-type abstention was not appropriate. Cine-Com Theatres Eastern States, Inc. v. Lordi, 351 F.Supp. 42 (D. N.J.1972). In *Cine-Com*, the Court found that the New Jersey Legislature had explicitly expunged from its definition of obscenity in N.J.S. 2A:115–1.1 (Supp.1973) the requirement that to be obscene published material had to be "utterly without redeeming social value" [hereinafter termed the *"Memoirs* social-value requirement or test"]. The Court premised its determination on a specific legislative finding incorporated into the statute to the effect that the Legislature did not believe that the plurality opinion in Memoirs v. Massachusetts, 383 U.S. 413, 418, 86 S.Ct. 975, 16 L.Ed.2d 1 (1967),[14] expressed the proper Constitutional standard, and that in order to facilitate obscenity prosecutions, the Legislature could constitutionally strike the *Memoirs* social-value requirement from its definition of obscenity. *Cine-Com, supra*, 351 F.Supp. at 47–49; N.J.S. 2A:115–1.1a.[15] The *Cine-Com* court concluded:

"The statute is thus susceptible to only one interpretation, an interpretation which rejects the social-value test. Since no New Jersey court could thus interpret the statute so as to avoid the Constitutional question, abstention is improper, and it is the duty of the federal court to decide whether or not the statute is Constitutional."

*Cine-Com, supra*, 351 F.Supp. at 49.

Since the filing of the *Cine-Com* decision, the United States Supreme Court has promulgated a new definition of obscenity in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), and Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973). Moreover, prior to the adoption of a new definition of obscenity by the United States Supreme Court but subsequent to the decision in *Cine-Com*, a New Jersey Chancery Court construed N.J.S. 2A:115–1.1 as defining obscenity according to the three prong test set forth in *Memoirs, supra*. Coleman v. Wilson, 123 N.J.Super. 310, 302 A.2d 555 (Ch., 1973).[16] These new de-

14. "Under this definition, as elaborated in subsequent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value."
383 U.S. at 418, 86 S.Ct. at 977.

15. N.J.S. 2A:115–1.1a (Supp.1973) provides:
"Legislative findings
The Legislature finds that the standards of obscenity now enunciated in chapter 115 of Title 2A of the New Jersey Statutes as amended and supplemented in recent years is unnecessarily permissive and a hindrance to effective legal action against obscene matter. The Legislature further finds that such unnecessary permissiveness has resulted from the incorporation into New Jersey Statutes of language

from influential opinions authored by certain United States Supreme Court justices; which language, however, does not represent binding majority decisions of the Supreme Court and, accordingly, need not bind the Legislature or the Judiciary of this State. The Legislature further finds that the most recent binding definition of 'obscenity' enunciated by the United States Supreme Court is represented by section 1 of chapter 165, laws of 1962, prior to subsequent amendments; and that said subsequent amendments ought to be repealed in order to reestablish a workable definition of 'obscenity' within the framework of our statutory law, and that certain other changes should be made in other statutes for the purpose of consistency.
L.1971, c. 449, § 2, eff. Feb. 16, 1972."

16. N.J.S. 2A:115–1.1 (Supp.1973) was construed in Coleman v. Wilson to define as obscene only such matter:
"(a) the dominant theme of which taking the matter as a whole appeals to a prurient interest in sex;

cisions merit a reconsideration of the *Pullman*-abstention determination in *Cine-Com.*[17]

In Miller v. California, *supra*, the Supreme Court redefined obscenity as follows:

"The basic guideline for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, Kois v. Wisconsin, *supra*, 408 U.S. [229], at 230, 92 S.Ct. [2245], at 2246 [33 L. Ed.2d 312] (1972), quoting Roth v. United States, *supra*, 354 U.S. [476], at 489, 77 S.Ct. [1304], at 1311 [1 L. Ed.2d 1498] (1957), (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value."

93 S.Ct. at 2615. The Court explicitly rejected the *Memoirs* "utterly without redeeming social value test" and in its stead adopted a new "social-value" test —"whether the work taken as a whole lacks serious literary, artistic, political, or scientific value" [hereinafter referred to, for the purposes of this opinion, as the *Miller* social-value test]. "At a minimum," said the Court, "prurient, patently offensive depiction or description of sexual conduct must have serious literary, artistic, political or scientific

value to merit First Amendment protection." *Id.*

■ In comparing the three-prong definition of *Memoirs* (*See* note 14 *supra*) with that of *Miller*; we note another significant difference. The *Miller* definition, unlike that in *Memoirs*, requires that to be obscene, material must depict or describe, in a patently offensive way, "*sexual conduct specifically defined by the applicable state law*" (emphasis supplied). Possible examples of what a state could define as sexual conduct under the second prong of the *Miller* definition are set forth in the opinion:

"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals."

93 S.Ct. at 2615. These definitions are only meant to be examples of the kinds of explicit description of sexual conduct required as a constitutional minimum in any regulation of purportedly obscene materials and do not foreclose states from adopting their own definitions, if sufficiently explicit.

■ For purposes of *Pullman*-abstention, we shall inquire then as to whether N.J.S. 2A:115–1.1 (Supp.1973) can reasonably be construed to embody

(b) is patently offensive because it affronts contemporary community (nation-wide) standards relating to the description or representation of sexual matters; and
(c) is utterly without redeeming social value."
Coleman v. Wilson, *supra*, 302 A.2d at 560.
In State v. Shapiro, 122 N.J.Super. 409, 300 A.2d 595 (Law Div. 1973), also decided subsequent to *Cine-Com* and prior to the Supreme Court's promulgation of a new obscenity standard, Judge McGann of the Monmouth County Superior Court construed N.J.S. 2A:115–1.1 (Supp. 1973) as excluding the *Memoirs*

social-value requirement but concluded that no such social-value requirement was constitutionally required. Judge Lane of the Monmouth County Chancery Division in Coleman v. Wilson, *supra*, had determined that without the *Memoirs* social-value requirement, N.J.S. 2A:115–1.1 (Supp. 1973) would be unconstitutional.

17. The Supreme Court decisions in *Miller* and *Paris Adult Theatre I* were handed down subsequent to oral argument in this matter. The Court thereupon requested additional submissions from the parties as to the effect of these decisions upon the challenge to the statute.

the *Miller* definition of obscenity.[18] Defendants contend that the primary intent of the New Jersey Legislature in enacting N.J.S. 2A:115–1.1 was to "proscribe obscene matter to the fullest extent possible under the First Amendment." Defendant's brief at 41. It was this construction of legislative intent, say the defendants, that led Judge Lane in Coleman v. Wilson, *supra*, to construe N.J.S. 2A:115–1.1 in conformity with what was then judged to be the constitutional standard—the three-prong definition in *Memoirs*.[19] Accordingly, argue the defendants, the statute is now susceptible to a construction in keeping with the new definition in *Miller*.

■ As a matter of statutory construction in certain circumstances, we agree that a statute can be construed to embody a constitutional formulation subsequently promulgated by the Supreme Court. For example, after the *Memoirs* decision, various courts construed state statutes which adopted the definition of obscenity first set forth in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) [20] so as to comport with the three-prong test of *Memoirs*.[21] See, e. g., Entertainment Ventures, Inc. v. Brewer, 306 F.Supp. 802, 814, 815 (M.D.Ala.1969) (three-judge court); Delta Book Distributors, Inc. v. Cronvich, 304 F.Supp. 662 (E.D.La.1969) (three-judge court), reversed on other grounds sub nom. Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701

(1971); Great Speckled Bird v. Stynchcombe, 298 F.Supp. 1291, 1292 (N.D.Ga. 1969) (three-judge court). The basis of construing the *Roth* language as embodying the *Memoirs* standard in all the above cases was that the Supreme Court had stated in *Memoirs* that the three-prong *Memoirs* test had always been part of *Roth*. 383 U.S. at 418, 419, 86 S.Ct. 975. In construing the state statutes containing *Roth* language as embodying the *Memoirs* definition, the various courts referred to above merely adopted the construction already adopted by the Supreme Court of the *Roth* language.

The present situation, however, is not quite apposite. In the first instance, the Supreme Court in *Miller* does not contend that the *Miller* definition is inherent in or embodied in *Roth* or in any other previous definition of obscenity. Second, as the statutory and legislative history of N.J.S. 2A:115–1.1 demonstrates, the *Roth* language adopted in the New Jersey statute is not susceptible even to the *Memoirs* construction, because as was determined in *Cine-Com*, the New Jersey Legislature turned its back on *Memoirs* with the specific intent of excluding what it regarded as the too-permissive *Memoirs* standard. *Cine-Com, supra*, 342 F.Supp. at 49.

When the present definition of obscenity was adopted by the New Jersey Legislature in L.1971, c. 449, the law

---

18. Defendants' argument that if the present definition of obscenity in N.J.S. 2A:-115–1.1 (Supp.1973) (*see* note 13 *supra*) is found to be unconstitutional, the prior definition (incorporating the *Memoirs* standard) springs back into existence is without merit. That argument relies upon an analogy to certain old New Jersey cases holding that where a statute completely repealing a prior law is itself repealed, the original act is thereby revived. In re Lippincott, 119 N.J.Eq. 343, 182 A. 622 (Ch. 1936); Wallace v. Bradshaw, 54 N.J.L. 175, 23 A. 759 (E. & A. 1891). These cases have been overruled by N.J.S. 1:1–3.2, enacted in 1960.

Defendants' "severance" argument (*see* N.J.S. 2A:115–1.5) is also without merit. Should the definition of obscenity be found unconstitutional, the operative sections of the statute depending upon that definition will also fall.

19. *See* note 14 *supra*.

20. "Whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to the prurient interest."

21. *See* note 14 *supra*.

contained a statement of legislative purpose as follows:

"The 1971 amendment deleted former subsection (b). L.1971, c. 449, contained a statement which read as follows:

'In 1957, the United States Supreme Court enunciated (in Roth v. United States, 354 U.S. 476 [77 S.Ct. 1304, 1 L.Ed.2d 1498]) the only definition of "obscenity" in which a majority of its members have ever concurred—viz., that the "obscene" is that which predominately "appeals to prurient interest." In 1962, this Legislature, in two acts, incorporated that definition into our statutes (where it had previously stood undefined). In nearly identical language, P.L.1962, c. 165, § 1 and P. L.1962, c. 166 § 2 defined the term as follows:

'The word 'obscene' . . . shall · mean that which to the average person, applying contemporary, community standards, when considered as a whole, has as its dominant theme or purpose an appeal to prurient interest.'

'Since then the Federal Supreme Court has fragmented in deciding several obscenity cases, agreeing upon results, but unable to reach a single opinion commanding majority agreement. Such nonmajority opinions do not constitute law binding upon lower courts. In 1966, however, one such binding opinion proved highly influential; in that opinion (in the so-called 'Fanny Hill' case, 383 U.S. 413 [86 S.Ct. 975, 16 L.Ed.2d 1]) three justices proposed that the test of 'obscenity' should comprise three elements, 'prurient appeal' being only one of them. The other two tests were those which have become known as the 'patent offensiveness' and 'social value' tests. Some States— New Jersey included—hastened to incorporate these supposed 'tests' into their statutory law, without reflecting that (a) if the tests were part of a binding Supreme Court decision they were already the 'law of the land' without further action, and (b) if they were not already thus binding, their enactment would unnecessarily hinder law enforcement.

Subsequent experience has shown that the additional 'tests'—particularly that which requires that an item be 'utterly without redeeming social value'—erect an almost insuperable barrier to prosecution, and allow the most objectionable materials to circulate unhampered. Meanwhile, other jurisdictions, which never adopted the added 'tests,' have been able to make convictions stick. Recently, for example, the United States Supreme Court refused to reverse a Maryland adjudication of the obscenity of a film —the same film which a New Jersey Superior Court judge in 1969 'reluctantly and with regret' found it necessary to rule not obscene because it 'does possess a modicum of social value.'

This bill would return New Jersey law to the pre-1966 standard—a standard which is constitutionally viable and which would permit action to be taken against the accumulating flood of salacious films and literature which in recent years has seriously alarmed our citizens.

To conform to the reestablished standard, this bill would also repeal P.L.1966, c. 199, § 2 (C. 2A:115–1.- 2), which merely establishes a rule of evidence concerning the 'social value' test; and P.L.1962, c. 166, § 2 (C. 2A: 115–1.1), which is a needless duplication of language already found in P.L.1962, c. 165, § 1 and applying to all of chapter 115 in Title 2A."

N.J.S. 2A:115–1.1 (Supp.1973) (legislative commentary).

This legislative statement demonstrates that the New Jersey Legislature wished to define obscenity in N.J.S. 2A:115–1.1 (Supp.1973) in accordance with the first prong of the *Memoirs* def-

inition to the exclusion of the other two prongs.[22] It is apparent that the first prong of *Memoirs*, the first prong of *Miller*, and N.J.S. 2A:115–1.1 (Supp. 1973), as the New Jersey Legislature has intended it to be construed contain the identical definition of obscenity.[23] In effect, the New Jersey Legislature has stated that to be obscene, it will suffice under N.J.S. 2A:115–1.1 (Supp. 1973), if the material taken as a whole, appeals to the prurient interest without more. In the first instance, therefore, the statute cannot be construed as embodying either the *Memoirs* or *Miller* social-value test. To so construe the statute would imply that those two tests were embodied in the first prong of the definition in *Memoirs* and *Miller* respectively, but such a construction would render entirely superfluous the third prongs of *Memoirs* and *Miller* which contain the respective social-value tests.[24]

For much the same reason, N.J.S. 2A:115–1.1 (Supp.1973) cannot be con-

strued to include the "patently offensive" test embodied in the second prong of *Memoirs* and carried forward in a more exacting fashion as the second prong of *Miller*. Proscribed under N.J. S. 2A:115–1.1 (Supp.1973) as a result, are materials which taken as a whole appeal to the prurient interest, but which may not depict or describe in a patently offensive way sexual conduct. On this basis alone, no construction of the New Jersey Statute could satisfy the *Miller* standard. Moreover, we point out that nowhere does the New Jersey Statute specifically define the sexual conduct the description or depiction of which is to be proscribed as also required in the second prong of *Miller*. Although Justice Burger speaking for the Supreme Court majority intimated that state obscenity statutes might be capable of a construction embodying a specification of proscribed sexual conduct,[25] no such con-

---

22. The "patently offensive" test and the "social-value" test which are rejected in the legislative commentary to N.J.S. 2A:115–1.1 (Supp. 1973) are the second and third prongs, respectively, of the *Memoirs* definition. *See* note 14 *supra*.

23. In his dissent in the companion case to *Miller*, Justice Brennan observed:
 "The differences between this formulation [that in *Miller*] and the three-pronged *Memoirs* test are, for the most part, academic. The first element of the Court's test is virtually identical to the *Memoirs* requirement that 'the dominant theme of the material taken as a whole [must appeal] to a prurient interest in sex.'"
 Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973).

24. Judge McGann in State v. Shapiro, 300 A.2d 595, 604 (Law Div., 1973), argues that "literary, scientific or artistic values are comprehended in the *dominant theme* requirement of *Roth*." *See* note 20 *supra*. However, in construing N.J.S. 2A:115–1.1 (Supp. 1973), we do not construe *Roth*, but rather language adopted after the New Jersey Legislature rejected the three-pronged *Memoirs* definition of obscenity with the specific intent to exclude the possibility that material with literary, scientific or artistic merit could still be protected if its dominant theme appealed

to the prurient interest. It will be recalled that in enacting N.J.S. 2A:115–1.1 (Supp. 1973), the Legislature had reacted to the result in Lordi v. UA New Jersey Theatres, Inc., 108 N.J.Super. 19, 259 A.2d 734, 742 (Ch. 1969) in which the court "reluctantly and with regret" found it necessary to rule the film "I am Curious Yellow" not obscene because it "does possess a modicum of social value." *See* Legislative Commentary quoted in full at p. 1325 of the text. In the UA New Jersey Theatres case, the court found that the dominant theme of the film, taken as a whole, appealed to the prurient interest, that the film was patently offensive because it affronted contemporary community standards relating to the description or representation of sexual matters, but because the film contained social value, it was not obscene. 259 A.2d at 738, 739. The New Jersey Legislature wished to ban such a film, and to that end, it struck the social-value requirement in the third prong of the *Memoirs* definition. It is therefore wholly inconsistent with the Legislative intent to construe the social-value requirement as being inherent in the "dominant theme" language of N.J.S. 2A:115–1.1 (Supp. 1973).

25. Miller v. California, *supra*, 413 U.S. at 24 n. 6, 93 S.Ct. 2607 n. 6, 37 L.Ed.2d 419.

struction of the New Jersey Statute is possible because the New Jersey Legislature by the exclusion of the second and third prongs of *Memoirs* from its definition of obscenity has purposefully adopted a generalized statute.[26]

A construction of N.J.S. 2A:115–1.1 (Supp.1973) embodying the *Miller* standard would have to stand upon the premise that a state can enact a statute which, although specifically intending to proscribe certain sexually-oriented material, would "intend" to proscribe something less if the standard it had intended to create turned out to be unconstitutional. To permit this kind of statutory construction, however, is equivalent to condoning a criminal statute that would prohibit "all expression not permitted by the First Amendment." [27] The offense to due process inherent in such a vague legislative enactment is apparent.[28] For the purpose of determining the propriety of *Pullman*-abstention, we cannot subscribe to the view that N.J.S. 2A:115–1.1 (Supp.1973) can be construed to forbid obscenity to the fullest permissible extent.

Defendants finally argue that even assuming that the construction given to N.J.S. 2A:115–1.1 (Supp.1973) in Coleman v. Wilson, *supra,* is not justifiable, it is possible that the New Jersey Supreme Court could adopt the construction adopted in *Coleman* and thus find that the New Jersey anti-obscenity statute comports with the constitutional requirements of *Miller.* In such a case, defendants are correct in saying that the statute so construed, would mean what the New Jersey Supreme Court said it

meant and thus would be free from any constitutional infirmity.

 It is true, as Justice Frankfurter said with respect to a federal court's construction of a state statute, that "no matter how seasoned the judgment of the district court may be, it cannot escape being a forecast rather than a determination." Railroad Comm'n v. Pullman Co., 312 U.S. at 499, 61 S.Ct. at 645. In *Pullman*-abstention situations, the inquiry of the federal court is inexorably reduced to a forecast or prediction of the possible constructions of the statute in question that are available to state courts. As seen above, we have already concluded, as a matter of *prediction,* as did the federal court in *Cine-Com,* that the state courts cannot give a saving construction to N.J.S. 2A:115.1.1 (Supp. 1973). How then is the fact that the State Chancery Court in *Coleman* proved *Cine-Com's* "prediction" wrong to affect this Court's prediction of the kind of construction available for N.J.S. 2A:115–1.1 (Supp. 1973) in light of *Miller*? Our answer is that we are not in a very much different situation than was the Court in *Cine-Com* at which time no state court had construed the statute. First, since the decision in *Miller,* no state court has, in fact, construed the statute. Second, although on the one hand *Coleman* construed the New Jersey anti-obscenity law as *Cine-Com* predicted it could not be construed, another state court in State v. Shapiro, 122 N.J.Super. 409, 300 A.2d 595 (Law Div., 1973) vindicated *Cine-Com's* prediction by concluding that N.J.S. 2A:115–1.1 (Supp.1973) intended to exclude

26. *See* Paris Adult Theatre I v. Slaton, *supra,* 413 U.S. at 95 n. 13, 93 S.Ct. 2628 n. 13, 37 L.Ed.2d 446 (Brennan, J., dissenting).

27. It is in this spirit that the New Jersey Chancery Court read the *Memoirs* social-value test back into N.J.S. 2A:115–1.1 (Supp. 1973), after admitting that it had been literally expunged: "The intention of the Legislature was to forbid obscene matter to the fullest extent permissible under the First Amendment." Coleman v. Wilson, *supra,* 302 A.2d at 559.

28. In addition to the due process problem inherent in such a construction, as a practical matter, to permit such a construction would effectively dictate abstention in every instance, since a state statute so construed would always be susceptible to a constitutional construction. We find it difficult to believe that the *Pullman* doctrine was intended to enable a state thus to insulate its statutes from constitutional review by federal courts

the *Memoirs* social-value test.[29] Thus, as the situation stands now, the lower State Courts are divided, the statute has not yet been construed by the Appellate Division in New Jersey, and there is little likelihood of a definitive adjudication from the New Jersey Supreme Court before 1974. We observe that the mere pendency of state proceedings that could settle the issue presented to the federal court does not mandate *Pullman*-abstention. Gibson v. Berryhill, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). This being a First Amendment situation where delay could chill protected expression and all other factors being equal, the balance weighs against abstention. In a situation such as this, the Court is relegated to the same guidelines for predicting what reasonable statutory construction may be arrived at as it would had no lower court cases been decided.

 A federal court cannot abstain on *Pullman* grounds merely because there exists the distant possibility that a state court will construe a statute so as to avoid a constitutional issue. That distant possibility is present in every case, and if it justifies abstention, then no federal court would ever be called upon to decide the constitutionality of a state statute. Such was not the plain meaning inherent in the scheme establishing review by federal courts of the constitutionality of state statutes. 28 U.S.C. §§ 2201, 2281, 2284. The rule of *Pullman*-abstention must be predicated upon a prediction by the federal courts that there exists not a distant possibility but rather a reasonable likelihood that a state statute can be construed in a manner which avoids the constitutional issue. We find that the construction suggested by defendants of N.J.S. 2A:115-

1.1 (Supp.1973) is not reasonably likely to obtain in the future. As the cases make clear, where no reasonable likelihood of a saving construction exists, it is incumbent upon a federal court to decide the constitutional issue, especially where First Amendment rights weigh in the balance and may be adversely affected by delay.[30] Zwickler v. Koota, 389 U.S. 241, 252, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).

## CONSTITUTIONALITY OF THE STATUTE

 The three-judge court in *Cine-Com, supra,* 351 F.Supp. at 50 held:

> "Until *Memoirs* is explicitly overruled by the Supreme Court or by Constitutional Amendment, it sets the Constitutional standard. Under its holding, the present New Jersey definition of obscenity, N.J.S. 2A:115–1.1 (Supp. 1972) cannot stand."

Now Miller v. California has explicitly overruled *Memoirs* and has established a new standard for obscenity. However, for the reasons set forth in the discussion on *Pullman*-abstention above, N.J.S. 2A:115–1.1 (Supp.1973) has no more of a claim to constitutional validity in light of *Miller* than it did when evaluated against the definition of obscenity in *Memoirs*. In sum, we hold that N.J.S. 2A:115–1.1 (Supp.1973) is unconstitutional because (1) it would proscribe material that possessed serious literary, artistic, political or scientific value; (2) it would proscribe material that did not depict or describe sexual conduct in a patently offensive manner; and (3) it cannot be construed as *specifying* the kind of sexual conduct the depiction of

---

29. The *Shapiro* court concluded, however, that N.J.S. 2A:115–1.1 (Supp.1973) was constitutional without the presence of a "redeeming social value test." *See* note 16 *supra.*

30. Defendants argue that as a matter of comity to the Third Circuit, this Court should abstain from its determination, or stay these proceedings, pending the outcome of the appeal in Cine-Com Theatres Eastern States, Inc. v. Lordi, 351 F.Supp. 42 (D.N.J.). We see no useful purpose served by delaying this decision, especially in view of its First Amendment character and the potential harm that delay might bring about. Moreover, we know of no principle of comity that dictates reserving decision or staying proceedings in such circumstances.

which can be proscribed under *Miller*. To the extent that New Jersey's anti-obscenity laws depend upon the definition of obscenity therein, those laws are unconstitutional.[31] No opinion is expressed, however, with respect to the constitutionality of New Jersey's anti-obscenity laws as applied to minors since the propriety of those laws and their enforcement against minors is not challenged in the present action.[32]

### RELIEF

Pending the filing of this opinion, the State of New Jersey has been restrained from enforcing N.J.S. 2A:115–1.1 (Supp.1973) against the within class of plaintiffs.[33] From the flurry of prosecutorial activity against allegedly obscene materials that precipitated this action and gave rise to the presently existing restraints, it would appear that plaintiffs will suffer irreparable harm if an injunction is not issued. Accordingly, defendants, their agents and all persons acting in active concert with them or subject to their supervision or control shall be restrained from instituting or prosecuting any action, proceeding or prosecution against the within class of plaintiffs under the New Jersey anti-obscenity law herein declared to be unconstitutional and of no effect. This injunction shall not extend, however, to the criminal prosecutions currently pending against the plaintiffs C & V, Wein and Guarino, nor to any criminal proceedings pending against any other plaintiffs in the within class as of June 1, 1973, the date on which the class was certified. Defendants shall likewise be restrained from instituting any civil proceedings or seizures pursuant to or under the authority of N.J.S. 2A:115–1.1 (Supp.1973).

The individual named plaintiffs herein, not proceeding as a class,[34] have also sought a ruling as to the constitutionality of book and film seizures. As to seizures effected under the authority of the New Jersey anti-obscenity statute declared invalid herein, the individual plaintiffs are adequately protected. As to seizures otherwise authorized, however, such as those pursuant to municipal anti-obscenity ordinances the validity of which have not been passed upon here,[35] a different issue is raised. We noted earlier that the prospective claims of the plaintiffs C & V, Wein and Guarino could be recognized in spite of the pendency of state criminal proceedings against them because of the class action nature of the challenge to New Jersey's anti-obscenity law.[36] With respect to the challenge to seizure procedures, however, no class has been certified,[37] and therefore, as to plaintiffs C & V, Wein and Guarino, this court must abstain on *Younger* grounds. Roe v. Wade, 410 U. S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).[38]

---

31. We intimate no opinion here as to the constitutionality of any municipal ordinances that purport to deal with obscene materials, since the propriety of such ordinances is not challenged in the pleadings, and in any event, would not properly be before us. Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967).

32. This decision therefore has no effect upon N.J.S. 2A:115–1.7(a) (Supp.1973).

33. Order effective June 1, 1973; filed July 6, 1973.

34. No class has been certified as to the challenge made against seizure procedures. *See* p. 1318 of the text.

35. *See* note 31 *supra*.

36. *See* pp. 1320–1322 of the text.

37. *See* note 34 *supra*.

38. Abstention with respect to C & V, Wein, and Guarino is *Younger* abstention:
"It is not abstention in the *Pullman* sense, because it involves a decision on the merits of the claim for equitable relief that there is an adequate remedy at law in the state courts and that therefore federal equitable relief is inappropriate."
Conover v. Montemuro, 477 F.2d at 1080 (3d Cir. filed Dec. 20, 1972), resubmitted en banc, March 29, 1973, (filed May 8, 1973). Since we are not dealing here with *Pullman* abstention, this Court need not retain jurisdiction of the matter. *Compare* American Trial Lawyers Ass'n v. New Jersey Supreme Court, 409 U.S. 467, 93 S.Ct. 627, 34 L.Ed.2d 651 (1973) (per curiam).

As to the application by the plaintiff Hamar for the return of its film seized by the defendants, no state criminal proceedings are pending. Because the statute under which plaintiff's sole copy of its film was seized has now been declared unconstitutional by this court, the seizure is improper and the film must be returned to the plaintiffs. Defendants shall have one week from the filing of this opinion to make a copy of the film for evidential purposes before returning it to the plaintiff Hamar. The procedure adopted here is designed to accord with the view recently taken by the Supreme Court in Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973).

An order shall be submitted consistent with this opinion, consented to as to form by all parties, within two weeks. No costs will be granted.

ADAMS, Circuit Judge (dissenting):

The doctrine of abstention enunciated in Railroad Comm'n v. Pullman Co.[1a] admonishes that, under certain circumstances, a federal court should postpone resolution of a challenge to the constitutionality of a state statute until there has been a definitive construction of that statute by the state court.[2a]

In making the determination whether to abstain, a court must engage in a balancing of weighty concerns. On the side of abstention is the possibility that the construction rendered by the state court would avoid or modify the constitutional challenge posed. By deferring its decision, the federal court might avert having to "mak[e] a tentative answer [on the meaning of the state statute] which may be displaced tomorrow by a state adjudication." [3a] Beyond canons of sound judicial procedure, abstention serves the important national interest in "the avoidance of needless friction with state policies," [4a] and a "scrupulous regard for the rightful independence of the state governments." [5a]

Against these considerations weigh the claims of the particular litigant who has properly invoked the jurisdiction of the federal court and who would possibly be subjected to extensive delay were the federal court to abstain.[6a]

Analyzing the facts present here and then sorting them into the two receptacles of the scale dictates that this Court, at least at this time, stay its hand.

The factors in favor of an immediate decision of this matter are not preponderant. The state has agreed that an interpretation by the highest state court of the obscenity statute here assailed will be expeditiously sought, and expects that oral argument will be held in September. Moreover, during the pendency of the state proceedings, the Attorney-General of New Jersey has indicated at oral argument that prosecutions will not be processed. These two items clearly diminish the possibility that the plaintiffs or members of their class, will be injured by the federal court's decision to abstain.

Compared to the elements militating against abstention, those suggesting that abstention is proper loom large. The Superior Court of New Jersey has recently interpreted the statute in question in a fashion which, but for intervening facts, would have avoided assaults on the constitutionality of the

---

1a. 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

2a. See e. g. Harrison v. NAACP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959).

3a. Railroad Comm'n v. Pullman Co., 312 U.S. 496, 500, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941).

4a. Id.

5a. Id. at 501, 61 S.Ct. at 645, quoting DiGiovanni v. Camden Ins. Ass'n., 296 U.S. 64, 73, 56 S.Ct. 1, 80 L.Ed. 47 (1935).

6a. See Zwickler v. Koota, 389 U.S. 241, 248, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). Cf. England v. Louisiana State Bd. of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

statute.[7a] Although the decision of the New Jersey tribunal is not a final, definitive interpretation of the statute, it illustrates the flexibility in statutory construction permitted to the courts of the state.

More importantly, on June 21, 1973, the United States Supreme Court decided Miller v. California.[8a] In that case, a majority of the Court, for the first time since Roth v. United States,[9a] "agree[d] on a standard to determine what constitutes obscene, pornographic material subject to regulation under the State's police power." [10a]

The standard established in *Miller* represented a change from the earlier pattern against which most states had enacted and interpreted their statutes. The Supreme Court recognized this variance yet made clear that new legislation was not necessarily required from the states. Rather, statutes "authoritatively construed" [11a] to comport with the new standards would be deemed acceptable.[12a]

This Court cannot "authoritatively construe" the New Jersey obscenity statute. The highest court of New Jersey can do just that.[13a]

A salutary rule of caution is the wise and ancient doctrine that a court not adjudge the validity of a statute except for manifest necessity, and that every doubt be explored and extinguished before moving to that grave conclusion. Because of this principle and the specific facts in this case, which in my judgment do not demand immediate decision, abstention is especially appropriate here.[14a]

---

**7a.** Coleman v. Wilson, 123 N.J.Super. 310, 302 A.2d 555 (N.J.Super.1973).

**8a.** 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed. 2d 419 (1973).

**9a.** 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

**12a.** "We do not hold, as Mr. Justice Brennan intimates, that all States other than Oregon must now enact new obscenity statutes. Other existing state statutes, as construed heretofore or hereafter, may well be adequate." Id., n. 6.

**13a.** In United States v. 12 200-ft. Reels of Super 8mm. Film, 413 U.S. 123, 93 S.Ct.

2665, 37 L.Ed.2d 500 (1973), the Supreme Court clearly indicated that the interpretation of the statute should be made by the state court.

"We further note that, while we must leave to state courts the construction of state legislation, we do have a duty to authoritatively construe federal statutes. . . ." 93 S.Ct. at 2670, n. 7.

**14a.** In deciding to abstain, I would retain jurisdiction of this case pending disposition by the state court system. *See* Zwickler v. Koota, 389 U.S. 241, 244–245 n. 4, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). If undue delay developed, the court could then proceed with an adjudication.